No. 17,641.

DOUGLAS PAUL BECKSTEAD *v.* PEOPLE OF THE
STATE OF COLORADO.
(292 P. [2d] 189)

Decided January 9, 1956.   Rehearing denied January 30, 1956.

Mr. LESLIE A. GIFFORD, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. NORMAN H. COMSTOCK, Assistant, for the People.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error, to whom we will hereinafter refer as defendant, was accused of first degree murder by information filed in the district court of Adams County. He entered pleas of not guilty, and not guilty by reason of insanity at the time of the alleged commission of the crime.

Pursuant to the provisions of C.R.S. 1953, 39-8-3, which since has been repealed, defendant first was tried on the issue raised by the plea of not guilty. This trial resulted in a verdict of guilty of first degree murder with imposition of the death penalty. Thereafter, the

issues raised by the plea of not guilty by reason of insanity were tried to the same jury which returned a verdict that defendant was sane. Motions for a new trial were heard and overruled, and judgment was entered directing that defendant be put to death in the gas chamber at the Colorado state penitentiary. Defendant, seeking reversal of the judgment, brings the case to this Court for review by writ of error.

Some ten assignments of error are argued by counsel for defendant as being sufficient to require a reversal of the judgment. However, due to the fact that retrial of the case will be under different procedures as prescribed by chapter 118, Session Laws of Colorado 1955, we find it unnecessary to consider all of the assignments of error on which counsel for defendant relies; accordingly, the statement of facts will be limited to those bearing upon the questions determined by this opinion.

Upon the first trial, and after the people had rested their case, counsel for defendant called Dr. Macdonald, a duly qualified expert and one of the psychiatrists at Colorado General Hospital under whose observation defendant had come during his commitment to that institution as required by law following the entry of the plea of insanity. During his examination the following statements appear in the record:

"Q. During those consultations, did you have occasion to examine him physically and mentally?

"A. Yes.

"MR. BYRNE: I object to this line of testimony, Your Honor, on the basis that it is not a part of this trial. It is not in issue here. And I would like to have the counsel state what his purpose of calling this witness is and what he hopes to show?

"THE COURT: That would have to be done. He would have to make an offer of proof outside the Jury before we go into this matter any further. The jurors will be excused for about five minutes until we determine what this is about.

"(Whereupon, the following proceedings were had out of the presence of the Jury and in the presence of the defendant:)

"MR. SARVAS: If Your Honor please, we realize that under Colorado law in order to settle the question of insanity that a separate trial is required.

"THE COURT: That is true.

"MR. SARVAS: Both my associate and myself realize as far as the issue of insanity is concerned that that is not a proper issue at this trial. However, our purpose and the offer of proof that we intend to prove or the thing we do desire to show by the doctor and can be construed as our offer of proof in this matter, is the fact that this defendant has been thoroughly examined by Dr. Macdonald and has made statements to him that can be construed actually as admissions against interest and has made explanations and various other statements that will show the Jury along the same line as the signed statements of the prosecution as to the actual facts that happened.

"Now, if the prosecution is allowed to and has been allowed to present statements to the Jury as to what this defendant has done and what he has admitted, we feel that we as the defense are entitled to present the same type of statements in his defense. Now, the doctor is not in this trial going to make any statement to the Jury, because that would be improper, as to whether or not the defendant is sane or insane. We fully recognize the fact that that is the subject matter and basis of a subsequent action. But Dr. Macdonald is able to testify before this Jury as to the physical condition and the mental condition of this defendant prior to and immediately after the alleged commission of the shooting.

"THE COURT: So far as the mental condition of this witness at the time of examination at this particular period wouldn't be admitted.

\* \* \*

"MR. SARVAS: There is one other further point,

Your Honor, that is an important matter, and that is as a result of this doctor's examination of the defendant and in view of the seriousness of the charge that is here, the doctor is able to make a statement or statements based upon his observation as to the ability of this defendant to form an intent as far as this particular action is concerned.

"THE COURT: That is not here. He will not be permitted to testify to that. Intent is a matter of legal intent. Of course, the doctor can testify as to the examinations that he has made and the findings at the next trial as far as his sanity is concerned, sane or insane; but at this particular hearing the only thing we have before the Jury and before the Court is whether or not he is guilty of the offense charged in this Information. After we determine that and we don't know, of course, what that determination will be, but if it happened to be a guilty finding as far as the Jury is concerned, then we will go into the other plea of insanity.

"MR. SARVAS: We are not attempting to . . . (Interpose).

"THE COURT: As far as his physical condition, that can be brought out at the other trial or he can testify himself. He is here.

"MR. SARVAS: How about the statements he has made to the doctor during the course of his examination?

"THE COURT: They wouldn't be admitted at this particular point because they would be hearsay. * * *

"MR. SARVAS: We will ask for the record to show that we are objecting to the ruling at this time and that Dr. Macdonald be excused until that other issue comes up." The foregoing events give rise to the first question hereinafter considered.

After the verdict of guilty of first degree murder with imposition of the death penalty had been returned, the trial court permitted the jury to separate and return on the following day to consider the evidence to be offered on the issue of insanity. Testimony of experts was re-

ceived and the parties rested. During consideration of the instructions to be given the jury, the question arose as to whether the proceeding was civil or criminal in character. In the course of the discussions in chambers between court and counsel the following took place:

"THE COURT: The one question to be determined at this particular state of the proceeding, is whether or not this man is sane or insane at the time of the commission of the act. That in itself is not criminal, it is a civil matter. Consequently, the motion will be overruled. [The motion referred to was by defendant's attorney and sought an order to "stop the proceedings" because of asserted irregularity.]

"MR. SARVAS: Therefore, just one more short statement, if that is the case that there is a transition from criminal to a civil action, we feel that the Jury should have been sworn again and gone through all the usual formality which was not done in this case.

\* \* \*

"THE COURT: There isn't any doubt in my mind but what if the Jury had been discharged, then I would agree with your philosophy. The Jury never has been discharged as far as the Court is concerned. They were sworn, of course, to try the other matter, that is true.

"MR. SARVAS: I believe the record will show the fact that they were allowed to disperse overnight and go to their homes.

"THE COURT: Nothing wrong with that. We can let jurors go home in civil matters, unless it is they are asking for the supreme penalty. This contention has been acknowledged by the District Attorneys themselves, so we will see what the District Attorney says about it. The defense attorney has objected to proceeding with this particular jury because of the fact that it is in the nature of a civil matter and the jurors should have been

sworn again and should have proceeded anew even though the jury never was discharged.

\* \* \*

"THE COURT: We will have to dismiss as to this and then call them back or call a new jury.

"MR. SARVAS: We are asking for a new jury.

"THE COURT: I don't know that I will grant it. We will dismiss the proceeding so far and have them back at another date and then swear them in. We will tell them to be here at nine o'clock a.m. on the fourteenth. Let's call the jury in here and we will dispose of it."

Thereupon the court excused the jurors and directed them to return on October 14th (a delay of five days) to be sworn to try the issue of sanity. An order was entered "vacating" all proceedings of October 9th on that issue. October 14, 1955, the jurors returned and counsel for defendant objected to trial of the sanity issue before them. His objection, and the court's ruling thereon, are, inter alia, as follows:

"MR. SARVAS: We object to this Jury going on ahead on this case. We feel it is improper, prejudicial, and absolutely out of order. They entered a verdict a week ago as to the extreme penalty and since that time they have been free to talk to other people, to read the newspapers, to listen to the radio, television, all the reports, and everything that had gone on. And even if we were to assume that they had free and open minds at that time, they certainly cannot have now. As far as this Defendant is concerned, it is very unfair. It is very prejudicial and I cannot find language strong enough to object to going ahead with this Jury. We want the Court to realize our feelings in the matter and know that we are protesting and protesting strongly against this same Jury hearing the matter.

"THE COURT: Does the District Attorney want to make any record here?

"MR. PRIEST: No.

"THE COURT: The objection, of course, will be over-

ruled. The Court feels that it is a special trial and in the nature of a civil proceeding. The Court feels that this Jury has never been excused. As far as being excused is concerned, they have always been retained as far as the Court is concerned to try the matter of insanity. The Court further feels that this is in the nature of a civil action because we are here now to determine whether this Defendant is sane or insane. There are no criminal proceedings connected as far as this insanity is concerned. If there was something pertaining to some crime as far as the insanity was concerned, then it would be different. He has already been tried as far as the criminal act is concerned and he has been found guilty. We are now trying the civil matter as to whether he was sane or insane at the time of the act."

Thereupon evidence was presented by experts who testified that defendant was "legally sane." One expert testified, inter alia: "I think that Mr. Becksted does suffer from a psychiatric condition; but it is a condition which as a rule does not respond to treatment in a hospital other than for a brief period of examination." He was characterized by one psychiatrist as a "psychopathic personality," which is "a condition which does not amount to insanity."

At the conclusion of the evidence instructions were given on the theory that the issue to be determined was civil in character. No instruction informed the jury that if it entertained a reasonable doubt concerning the sanity of defendant he should be given the benefit of such a doubt. The jury was not informed that upon the issue of sanity it must believe from the evidence that defendant was sane beyond a reasonable doubt before returning a verdict that he was sane. Strange as it may seem, no objections or exceptions were made to the instructions as given, and no instructions tendered upon this subject were refused. The foregoing incidents give rise to the second question hereinafter considered.

At the conclusion of the first trial on the issues raised

by the plea of not guilty, counsel for defendant tendered an instruction covering the crimes of voluntary and involuntary manslaughter. The court refused to submit for consideration by the jury any instructions upon those offenses. The refusal to instruct on these offenses gives rise to the third question hereinafter considered.

## Questions to be Determined.

First: *In the trial of one accused of first degree murder who has entered pleas of "not guilty" and "not guilty by reason of insanity," where the issues raised by the latter plea are separated from the former for purposes of trial; upon trial of the issues raised under the "not guilty" plea is accused entitled to introduce all competent evidence, including that of experts, which is relevant to the question of whether he lacked the mentality to form the specific malicious intent which is an essential ingredient in the crime of first degree murder, namely, the specific intent deliberately and premeditatedly to unlawfully take the life of another?*

This question is answered in the affirmative. To pinpoint the error disclosed by the record before us we need only to quote therefrom a few lines. Counsel for defendant had called a psychiatrist from the Colorado General Hospital who had examined defendant at length. He started to question him concerning his mental condition. The district attorney objected. Defendant's attorney informed the court that the offered evidence was "important" and made clear his purpose with the statement, " * * * the doctor is able to make a statement or statements based upon his observation as to the ability of this defendant to form an intent as far as this particular action is concerned." The court in rejecting the evidence said: "That is not here. He will not be permitted to testify to that." The court erred. The district attorney was badly mistaken in his concept of the law when he insisted upon the exclusion of the evidence which clearly was admissible under numerous decisions

of this Court and other courts of last resort. In the case of *Ingles v. People,* 92 Colo. 518, 22 P. (2d) 1109, this Court said, inter alia:

"A defendant, by reason of his failure to raise the issue of insanity in the manner required by the act of 1927, may be conclusively presumed to be sane in the sense that he is responsible and amenable to the law, and still, by reason of some mental derangement — insanity or otherwise — may not have acted with express malice, deliberation or premeditation; and in such case he would not be guilty of first-degree murder; second-degree murder being the highest degree of homicide of which he could be convicted."

Similar language was used by this Court in *Brennan v. People,* 37 Colo. 256, 86 Pac. 79.

In *Battalino v. People,* 118 Colo. 587, 199 P. (2d) 897, we quoted with approval from 26 Amer. Juris., page 228, section 105, as follows:

"However, evidence of insanity, or rather, *evidence of the condition of the mind* of the accused at the time of the crime, together with the surrounding circumstances, may be introduced, not for the purpose of establishing insanity, but to prove that the situation was such that a specific intent was not entertained — that is, *to show absence of any deliberate or premeditated design.*"

In *Berger v. People,* 122 Colo. 367, 224 P. (2d) 228, this Court said, inter alia:

"In *Ingles v. People, supra,* it was held, and we so construed it in *Battalino v. People, supra,* that evidence of any mental ailment, abnormality or deficiency may be material to establish that defendant was incapable of forming and executing a purpose or executing an act with malice, deliberation and premeditation, without which a verdict of murder of the first degree could not be sustained."

In *Leick v. People,* 131 Colo. 353, 281 P. (2d) 806, we said, inter alia:

"We are of the opinion that upon the first trial, con-

ducted under the statute, of issues framed by the plea of not guilty, any evidence bearing on the mental condition of the accused, including evidence of legal insanity, is admissible as bearing on the ability to deliberate and form the intent essential to murder in the first degree. A refusal on the part of a trial court to admit this evidence would be a denial of due process of law for reasons fully discussed in *Ingles v. People, supra.*"

Our opinion in the Leick case was not announced until after the case at bar had been tried, and court and counsel cannot be charged with lack of familiarity with it, but the law quoted from that opinion has been fundamental and well established in this jurisdiction for many years.

■ We regret that we must say once more that which has heretofore been said over and over again for the guidance of trial courts and prosecuting officers: *A defendant in a first degree murder case has the right, without reference to a plea of insanity, to establish mental deficiency as bearing upon his capacity to form the specific intent essential to first degree murder.* Just so long as trial courts and district attorneys overlook or misapprehend our decisions and deny that right to persons accused of murder, this Court will be compelled to reverse judgments of guilt; the taxpayers of the several counties will continue to bear the heavy costs of second trials in murder cases; and ultimate justice will continue to be delayed.

Second: *In the prosecution of a charge of first degree murder in which the accused has entered a plea of not guilty by reason of insanity as well as that of not guilty, and where a separate trial is had upon the issue of insanity; is that trial to be conducted as a "civil" action?*

■■ This question is answered in the negative. In a criminal case the defendant can assert as many defenses as can be supported by evidence. If affirmative defenses such as self defense or alibi are presented the issues thereon are tried as part of the criminal case, and

if any such defense raises in the mind of a jury a reasonable doubt as to the defendant's guilt he should be acquitted. The defense of insanity stands upon the same footing. The fact that this issue has been separated from other questions for the purpose of trial does not make a civil case out of that which is tendered as a defense to an accusation of crime. In the instant case, when the trial court proceeded to dispose of the issue of insanity as a "civil" matter, permitted the jury to separate for a period of five days, and failed to give an instruction that the jury must find from the evidence beyond a reasonable doubt that defendant was sane before a verdict to that effect could be returned, reversible error was committed. Here again the court has frequently announced the law applicable to the question.

In *Martz v. People,* 114 Colo. 278, 162 P. (2d) 408, we held that although sanity is presumed in the first instance, and the district attorney is not obliged to offer evidence of sanity in his case on direct, the burden of proving that defendant was sane beyond a reasonable doubt is on the people.

In *Mundy v. People,* 105 Colo. 547, 100 P. (2d) 584, we held that the statute requiring accused to specifically plead insanity as a defense, to avail himself thereof, changed only the method of raising that question, and the substance of the accused's constitutional right to a jury trial on that question was preserved.

In *Graham v. People,* 95 Colo. 544, 38 P. (2d) 87, we held that if the jury has a reasonable doubt as to whether the accused is sane, he should be found not guilty.

In *Carter v. People,* 119 Colo. 342, 204 P. (2d) 147, we said, inter alia:

"Upon the issue of insanity, if a reasonable doubt existed in the minds of the jury as to whether the defendant was, or was not, sane, he was entitled to a verdict of not guilty by reason of insanity."

Counsel on both sides overlooked the foregoing basic principles in the trial of the instant case, and the record

contains no assignment of error upon the question under consideration. We have raised this question on our own motion to the end that possible error may be avoided upon the retrial of the case.

Third: *Did the trial court err in refusing to submit to the jury the issues of voluntary and involuntary manslaughter?*

This question is answered in the affirmative. We will not lengthen this opinion by quoting from the record evidence which required submission of instructions to the jury covering the offenses of voluntary and involuntary manslaughter. Suffice it to say that there was evidence which, if believed by the jury, would have warranted a verdict of guilty as to either of those offenses. Defendant was entitled to have the jury instructed upon his theory of the case. The distinguishing features between murder of either the first or second degree, and manslaughter, are the ingredients of malice and deliberation required in the former which are absent in the latter. In this connection evidence shown by the record in the instant case raised issues of fact requiring determination by the jury under proper instructions concerning the law applicable to voluntary and involuntary manslaughter.

The judgment is reversed.