The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Cynthia YOUNG, Defendant–Appellant.

No. 88CA0046.

Colorado Court of Appeals,
Div. V.

Feb. 28, 1991.

Rehearing Denied March 28, 1991.

Certiorari Denied March 16, 1992.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Hope P. McGowan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Jaydee K. Bachman, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge DUBOFSKY.

Defendant, Cynthia Young, appeals the judgment entered upon a jury verdict finding her guilty of manslaughter. We reverse and remand for a new trial.

Defendant was charged with first degree murder and the commission of a crime of violence after a shooting at her home. She filed a motion to dismiss, claiming immunity as provided under the so-called "make-my-day" law, in § 18–1–704.5, C.R.S. (1986 Repl.Vol. 8B).

The trial court denied her request for a pretrial hearing on the motion. Defendant then sought relief in the Colorado Supreme Court. That court held that defendant must be provided a pretrial hearing to determine the issue of immunity under § 18–1–704.5. *Young v. District Court,* 740 P.2d 982 (Colo.1987).

On remand, the following evidence was presented in the form of testimony and a videotaped interview of defendant by an investigating officer. On the date in question, decedent James Clay, Muriel McCrea, and others pulled up in front of defendant's home and honked their car horn to get the attention of defendant's neighbor. The neighbor came to her door and she and McCrea conversed by shouting to one another. Annoyed by the noise, defendant came out of her house and exchanged words with the neighbor. Shortly thereafter, the occupants of the car left.

Approximately two hours later, decedent and the others returned and parked on the street near defendant's home. Defendant's fiance, Yahya Saleen, was at that time leaving defendant's home to pay a bill. The decedent confronted Saleen about the previous exchange of words with defendant. Defendant instructed Saleen to "go on" from her porch.

According to defendant and Saleen, decedent appeared to be drunk and angry, and threatened defendant. Saleen terminated the conversation with decedent and went to hail a police officer who was one-half block away. While Saleen was gone, decedent approached defendant as she stood in her doorway.

Defendant stated that, as she stood inside her home, decedent approached her in a hostile and aggressive manner with clenched fists and threatened her physically stating that he would "f—— me up; he'd hurt me." She then secured a pistol from a nearby closet. She further stated that the decedent entered upon and crossed her porch, and placed one foot inside the door. However, physical evidence at the scene failed to establish whether decedent actually entered the doorway.

At that point, defendant shot decedent in the face and chest, and he later died from the bullet wounds. A serologist's report indicated that decedent's blood alcohol content was .354 grams of alcohol per 100 milliliters of blood. In response to the questions of the investigating officer, defendant indicated that she fired the pistol in self-defense. Later in the interview she also stated that she fired because she was "tired of it."

The trial court denied defendant's motion to dismiss, concluding, with no findings, that she had failed to meet her burden to prove by a preponderance of the evidence that decedent made an unlawful entry into her home. The court did indicate that the porch should not be considered as part of defendant's dwelling for purposes of § 18–1–704.5.

The case proceeded to trial, after which a jury entered a verdict of guilty of heat of passion manslaughter, as provided in § 18–3–104, C.R.S. (1986 Repl.Vol. 8B). Notwithstanding the trial court's ruling on the motion, defendant was permitted to argue to the jury without objection from the prosecution that the porch was part of her residence and that, therefore, she should be acquitted based upon an affirmative defense of immunity.

On review of the record on appeal, this court determined that additional findings by the trial court were necessary to address all of the pertinent provisions of § 18–1–704.5 in ruling on defendant's pretrial motion for immunity.

Following remands from this court, the trial court ultimately submitted the following additional findings:

"That on or about August 1, 1986, the victim was intoxicated. That on or about August 1, 1986, the victim, after having been advised by the neighbors of the defendant of several arguments, approached the defendant's home located at 2826 Williams Street in the City and County of Denver.

"That the defendant observed the victim coming toward the front porch, when she went back into the house, obtained a gun and returned to the front door and with

her right hand pushed open the screen door. The victim then stepped onto the porch and put his hand on the door, whereupon the defendant fired two shots into the victim's body.

"The court finds that the victim, by the great weight of the evidence, did not exercise any physical force against the defendant and the court further finds that there was no intrusion by the victim into the defendant's home.

"That the victim made an unlawful entry onto the porch of the defendant's dwelling;

"The defendant did not have a reason to believe that the victim had committed, was committing or intended to commit a crime against a person or property;

"The defendant did not reasonably believe that the victim might use any physical force no matter how slight against any occupant."

## I.

■ Defendant contends that the trial court erred in failing to grant her immunity from prosecution under § 18–1–704.5 because the decedent's presence on her porch constituted an unlawful entry of her dwelling. However, because of the other findings by the trial court, we reject this contention.

Section 18–1–704.5 provides as follows:
"(1) The general assembly hereby recognizes that the citizens of Colorado have a right to expect absolute safety within their own homes.

"(2) Notwithstanding the provisions of section 18–1–704, any occupant of a dwelling is justified in using any degree of physical force, including deadly physical force, against another person when that other person has made an unlawful entry into the dwelling, and when the occupant has a reasonable belief that such other person has committed a crime in the dwelling in addition to the uninvited entry, or is committing or intends to commit a crime against a person or property in addition to the uninvited entry, and when the occupant reasonably believes that such other person might use

any physical force, no matter how slight, against any occupant.

"(3) Any occupant of a dwelling using physical force, including deadly physical force, in accordance with the provisions of subsection (2) of this section shall be immune from criminal prosecution for the use of such force."

Resolution of conflicting evidence is the function of the trial court. And, while we may well have reached a different conclusion based upon the record before us, we must affirm the trial court unless the record contains no basis to support its finding. *See People v. Malczewski*, 744 P.2d 62 (Colo.1987).

Here, defendant's statements concerning the incident were inconsistent. On the one hand, she stated that she acted in self-defense. On the other hand, she stated that she was "tired of it," apparently referring to various conflicts with the neighbor. The trial court resolved the conflict by finding that defendant neither believed that the decedent intended to commit a crime nor that the victim might use physical force of any kind. Hence, we must affirm the court's denial of defendant's motion.

## II.

■ Defendant next argues that the trial court erred in denying the admission of expert testimony in support of her claim of self-defense. We agree.

Besides relying upon § 18–1–704.5 which permits the use of deadly force against an intruder, defendant also asserted the defense of self-defense under § 18–1–704, C.R.S. (1986 Repl.Vol. 8B).

■ Although charged with first degree murder and crime of violence, defendant was convicted of only the lesser included offense of heat of passion manslaughter, and so, can be retried only for that offense. *See Ortiz v. District Court*, 626 P.2d 642 (Colo.1981).

Thus, the threshold question for us is whether self-defense is available to a defendant who is charged with heat of passion manslaughter. In *People v. Thomas*,

789 P.2d 470 (Colo.App.1989) (*cert. granted* March 19, 1990), a division of this court held that the affirmative defense of self-defense is not available if the charge is heat of passion manslaughter.

■ In the *Thomas* holding, the court reasoned that since self-defense depended on a person's reasoned response to a threatening situation, it did not provide a defense to heat of passion manslaughter which occurs because of a person's inability to restrain his passion. Therefore, under the rationale of *Thomas*, the trial court here did not err in excluding the expert witness' testimony about defendant's state of mind as it pertained to her claim of self-defense because such defense is not relevant to heat of passion manslaughter. However, we disagree that the affirmative defense of self-defense is so limited and we, therefore, decline to follow *People v. Thomas*. We conclude the scope of self-defense under § 18–1–704 is sufficiently broad-based to provide a defense against heat of passion manslaughter.

Initially, we note that § 18–1–704 is a subpart of the Colorado Criminal Code which is entitled *Justification and Exemptions from Criminal Responsibility*. This title suggests that the defenses contained in the section provide a complete defense to related criminal charges.

Section 18–1–704 in defining self-defense states:

"[A] person is *justified in using* physical force upon another person in order to defend himself ... from what he reasonably believes to be the ... imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose." (emphasis added)

The language asserting that use of force is "justified" means that, in such circumstances, a defendant is not criminally responsible for his actions. That is, self-defense represents a complete exoneration from criminal conduct rather than merely being a mitigation of the severity of that conduct.

W. LaFave & A. Scott, *Criminal Law* § 53 (1972) states:

"When the steps he [defendant] takes are reasonable, he has a complete defense to such crimes against the person as *murder* and *manslaughter*, attempted murder, assault and battery and the aggravated forms of assault and battery. His intentional infliction of ... physical harm upon the other, or his threat to inflict such harm, is said to be *justified* when he acts in proper self-defense, so that he is *not guilty of any crime.*" (emphasis added)

*See Vigil v. People*, 143 Colo. 328, 353 P.2d 82 (1960) (self-defense is a natural right which is based on the law of self-preservation).

In contrast, the crime of heat of passion manslaughter represents a recognition of the frailty of human nature and serves to reduce a homicide to manslaughter. *Henwood v. People*, 54 Colo. 188, 129 P. 1010 (1913). Thus, conviction of heat of passion manslaughter reflects a determination that the responsibility of a person for killing another should be mitigated, not exonerated, because of the circumstances in which they arose. *See* R. Perkins & R. Boyce, *Criminal Law* ch. 10 § 4 (3d ed. 1982); *Allen v. United States*, 157 U.S. 675, 15 S.Ct. 720, 39 L.Ed. 854 (1895).

However, as the record in this case demonstrates, evidence and inferences in a particular case may support either a finding that defendant acted out of passion and without fear for her safety or that she acted strictly in self-defense. Hence, in our view, the scope of self-defense will be erroneously eroded if a defendant charged with heat of passion manslaughter cannot effectively rely on this defense. A person who is charged with heat of passion manslaughter would be improperly precluded from having the jury determine the real reason for the killing.

In our view, too much should not be made of the "reasoned" response of a person acting in self-defense. As succinctly pointed out in *Brown v. United States*, 256 U.S. 335, 41 S.Ct. 501, 65 L.Ed. 961 (1921):

"Detached reflection cannot be demanded in the presence of an uplifted knife."

In *People v. Fink*, 194 Colo. 516, 574 P.2d 81 (1978), the court held that a self-defense instruction is not available to a person charged with reckless or criminally negligent homicide. The elements of criminally negligent homicide and reckless manslaughter differ significantly from those of heat of passion manslaughter and on that basis, we conclude that *People v. Fink* is not dispositive of a defendant's right to obtain a self-defense instruction here.

We, therefore, conclude that the affirmative defense of self-defense, with its implementing instruction, provides a basis for a jury to acquit a person charged with heat of passion manslaughter.

The question here, thus becomes, whether the trial court erred in excluding the testimony of a psychiatrist whom defendant sought to call as an expert witness. The psychiatrist would have testified that defendant had witnessed her mother's murder and had been sexually abused by her father and later physically abused by her first husband. He would have further testified that, based on her life experience, defendant, who is black, had an overwhelming fear of black men. Finally, the psychiatrist would have testified that defendant's 73 IQ significantly affected her perception of the danger presented in this situation. He would have opined that, in the situation at issue, defendant perceived a serious threat to her home and herself and was extremely fearful and reactive because of these fears and experiences. We conclude that the trial court erred in excluding this testimony.

■ A defendant in a criminal case is guaranteed a meaningful opportunity to present a complete defense and thus to present relevant evidence which may create a doubt as to his or her guilt. *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); *People v. Bueno*, 626 P.2d 1167 (Colo.App.1981). Compelling constitutional rights permit a defendant to present evidence which explains her defense. *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

■ In excluding the psychiatrist's testimony, the trial court indicated that such testimony was unnecessary because defendant could testify to these matters. However, if a person responds to a homicide charge by claiming that he or she did not have the requisite state of mind to commit the charged offense, then such defendant is entitled to have an expert render an opinion on defendant's state of mind. *People v. Diaz*, 644 P.2d 71 (Colo.App.1981); *see Becksted v. People*, 133 Colo. 72, 292 P.2d 189 (1956); *but see People v. Lanari*, 811 P.2d 399 (Colo.App.1989) (*cert. pending* October 23, 1990). Furthermore, defendant is entitled to corroborate her testimony by presenting other competent evidence concerning her mental state and actions. *See People v. Green*, 38 Colo.App. 165, 553 P.2d 839 (1976).

Here, defendant's expert proffered relevant testimony as to defendant's state of mind at the time of this incident. The fact that defendant could testify about some aspects of her state of mind and her intelligence does not preclude a psychiatrist from explaining defendant's state of mind. And, such testimony is even more relevant here in that defendant's deficient mental ability and disadvantaged background seriously limited her ability to communicate her state of mind to the jury. *See United States v. Hill*, 655 F.2d 512 (3rd Cir.1981), *cert. denied*, 464 U.S. 1039, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984).

The psychiatrist's testimony would have aided the jury in determining whether defendant acted either in self-defense or because of fear. Thus, it should have been admitted. *See People v. Diaz, supra;* CRE 702.

In its terse ruling here, the trial court apparently assumed that the subject matter involved in the expert's testimony was within the ken of the jury and/or that the expert's testimony was a waste of time under CRE 403. First, we do not agree, under these circumstances, that the underlying reasons for defendant's actions are readily understood by a jury. More significantly, however, the standard under CRE

702 is whether the proffered testimony would assist or help the jury in determining the issues in the case. *See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* § 702[02] (1990); *United States v. Sickles,* 524 F.Supp. 506 (D.Del.1981), *aff'd,* 688 F.2d 827 (3rd Cir.1982). Thus, since the testimony would have aided the jury in resolving a critical factual issue, the trial court committed reversible error in excluding it, and, on retrial, under a similar evidentiary posture, such testimony should be admitted.

The judgment is reversed and the cause is remanded for new trial on the charge of heat of passion manslaughter.

RULAND, J., concurs.

JONES, J., concurs in part and dissents in part.

Judge JONES concurring in part and dissenting in part.

I concur with the majority that the judgment of conviction must be reversed, but dissent from the remand ordered. In my view, the necessity for a new trial should depend on the trial court's reconsideration of the "make-my-day" immunity issue.

I agree with defendant's contention that the trial court erred in failing to grant her immunity from prosecution under § 18–1–704.5, C.R.S. (1986 Repl.Vol. 8B) because the decedent's presence on her porch constituted an unlawful entry of her dwelling which the court failed to consider. I would, therefore, reverse and remand for further consideration of that issue.

Section 18–1–704.5 provides as follows:

"(1) The general assembly hereby recognizes that the citizens of Colorado have a right to expect absolute safety within their own *homes.*

"(2) Notwithstanding the provisions of section 18–1–704, any occupant of a *dwelling* is justified in using any degree of physical force, including deadly physical force, against another person when that other person has made an unlawful entry into the *dwelling,* and when the occupant has a reasonable belief that such other person has committed a crime in the *dwelling* in addition to the uninvited entry, or is committing or intends to commit a crime against a person or property in addition to the uninvited entry, and when the occupant reasonably believes that such other person might use any physical force, no matter how slight, against any occupant.

"(3) Any occupant of a *dwelling* using physical force, including deadly physical force, in accordance with the provisions of subsection (2) of this section shall be immune from criminal prosecution for the use of such force." (emphasis added)

A defendant seeking immunity under § 18–1–704.5 bears the burden of establishing by a preponderance of the evidence the statutory conditions for immunity. *People v. Arellano,* 743 P.2d 431 (Colo.1987); *People v. Guenther,* 740 P.2d 971 (Colo.1987).

The General Assembly's use of both the term "home" and the term "dwelling" in § 18–1–704.5 is an inconsistency that appears to create an ambiguity.

Since a court, when construing a statute, must ascertain and give effect to the intent of the General Assembly, we must look to the language of the statute itself, and give the statutory terms the accepted and understood meanings. *People v. Guenther, supra.* Furthermore, the history of an ambiguous statute is important in ascertaining legislative intent, and that legislative history may be reflected by successive drafts of a bill. *See Haines v. Colorado State Personnel Board,* 39 Colo.App. 459, 566 P.2d 1088 (1977); *see also Three Bells Ranch Associates v. Cache La Poudre Water Users Ass'n,* 758 P.2d 164 (Colo.1988).

As initially proposed, H.B. 1361 concerned the use of deadly force "within" the "residence" of the person using the deadly force. A compromise bill, which ultimately became enacted as § 18–1–704.5, was broader in that it covered use of physical force by "any occupant of a *dwelling* ... against another person ... [who] has made an unlawful entry into the *dwelling....*" (emphasis added) Thus, "dwelling" was the operative noun ultimately selected to describe the structure related to which an

occupant may use deadly force pursuant to the statute.

Section 18–1–901(3)(g), C.R.S. (1986 Repl. Vol. 8B) defines "dwelling" as a building which is used, intended to be used, or usually used by a person for habitation. This definition comprehends an entire building, and even includes those parts of a residence that are not usually used by a person *directly* for habitation, including an open garage. *See People v. Jiminez*, 651 P.2d 395 (Colo.1982).

It must be presumed that the General Assembly has knowledge of the legal import of the words it uses and intends that each part of a statute be given effect. Thus, I conclude that use of the word "dwelling" by the General Assembly was a deliberate, legislative choice, calculated to obtain the result mandated by its use of the word. *See People v. Guenther, supra;* § 2–4–201(1)(b), C.R.S. (1980 Repl.Vol. 1B).

Further support for this construction of this statute may be found from the presumption that, if, as here, the General Assembly includes a term in a statute which it has defined elsewhere in an applicable statute, and which has been the subject of prior judicial construction, the General Assembly was cognizant of that interpretation and intended use of the word in concert therewith. *See People v. Green*, 734 P.2d 616 (Colo.1987). *See also* § 18–1–901(3)(g); *People v. Jiminez, supra.*

Here, the porch of defendant's home, which is permanently affixed to the house, is covered by a roof and enclosed by a low brick wall on three sides with an opening at the top of the steps leading to the front door of the house. I agree with defendant that the porch is so integral a part of her house that, for purposes of § 18–1–704.5, it is a part of her dwelling.

Certainly, a permanently attached, covered, and partially-walled porch serves as an extension of a residence for purposes of many common activities associated with habitation. And, a porch is more widely used for those purposes which generally may be thought of as "habitation" than a garage, which our supreme court, prior to the promulgation of § 18–1–704.5, determined was part of a dwelling. *See People v. Jiminez, supra.*

Moreover, the courts of several other states have held that a porch is an integral part of a dwelling. *See State v. Martinez*, 229 N.J.Super. 593, 552 A.2d 232 (1989); *State v. Bonano*, 59 N.J. 515, 284 A.2d 345 (1971) (for purposes of self-defense, a "porch or other similar physical appurtenance is deemed to come within ... [the concept of dwelling-house]"); *State v. Scott*, 162 Kan. 571, 178 P.2d 182 (1947) ("porches ordinarily constitute an integral part of the dwelling house"); *Moree v. State*, 152 Miss. 278, 119 So. 202 (1928) ("a charge that one entered a dwelling house is supported by proof that he came onto the front porch of such dwelling house"); *Downer v. State*, 10 Ga.App. 827, 74 S.E. 301 (1912) ("The front porch of a house is a part of the house itself...." *See also State v. Green*, 305 N.C. 463, 290 S.E.2d 625 (1982) (upholding convictions where defendant had broken and entered a storage room adjacent and appurtenant to the dwelling, the court held the term dwelling-house to include not only the house but appurtenant structures); *Martin v. Tudo*, 121 Ga.App. 240, 173 S.E.2d 403 (1970) ("[T]he term 'dwelling' ... includes everything pertinent and accessory to the main building...."; holding that a contract containing the term "occupied dwelling" referred to "principal house ... and connected structures.").

The prosecution, in effect, concedes that a porch which is totally enclosed in glass with a glass door would necessarily be included as part of a dwelling. However, the prosecution has urged this court to limit the definition of dwelling to include only a porch which satisfies those requirements. I conclude that this concept is both unworkable and inconsistent with the intent of the General Assembly in adopting § 18–1–704.5.

A determination that porches enclosed in glass with a glass door are part of a dwelling, but that porches enclosed in screen are not, or that porches enclosed with either glass or screen but without a closed entrance are not, would lead only to confu-

sion and artificial distinction. Thus, I would have us necessarily conclude that the definition of a dwelling for purposes of § 18–1–704.5, as for statutes defining criminal acts, includes roofed, permanently affixed, open or closed porches.

In spite of the conflicting evidence, it is apparent from the trial court's comments that it found that decedent entered defendant's porch but had not gone in or through the doorway to the residence. This finding is supported by testimonial evidence at the hearing, and at trial from a neutral police officer. It is also supported by the presence of blood left on the floor of the porch from decedent's wounds as he reeled off of the porch after the mortal wounds were inflicted. Thus, in my view, the statutory condition that decedent enter defendant's dwelling was satisfied for purposes of invoking § 18–1–704.5.

Further, the trial court's findings reveal that the court was confused as to whether the evidence demonstrated that the deceased's demeanor on the porch satisfied the other elements of § 18–1–704.5 which may reasonably lead the occupant to use deadly force if entry into the dwelling is made.

Thus, under the circumstances of this case, I would conclude that decedent made an unlawful entry into defendant's dwelling. However, I cannot discern from the trial court's finding whether that entry was for purposes which otherwise trigger immunity for the use of any degree of physical force. Therefore, I would reverse the judgment of conviction and remand to the trial court for a new hearing on the defendant's motion to dismiss consonant with the views expressed herein.

Were the case to be remanded, it is possible that, as before, the trial court would determine that defendant is not immune from prosecution pursuant to § 18–1–704.5. Under that circumstance, and the consequent necessity of a new trial, I would concur with Part II of the majority opinion.