**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Hayward Curtis LAWSON, Defendant-Appellant.**

**No. 75–067.**

Colorado Court of Appeals, Div. II.

March 25, 1976.

Rehearing Denied April 15, 1976.

Certiorari Denied June 21, 1976.

tem as a roamer or transient and obtains service *from the utility in the particular foreign area.* In order to take advantage of the transient service, the subscriber must (1) have a unit equipped with the frequencies assigned to the utility in the foreign area, (2) have compatible equipment, and (3) pay the transient rate. Having met these requisites, the subscriber can notify the operator that he wishes to make a call, have the operator dial the number, and manually tie the call to

the transient. Transient service, of course, is intended for the occasional call that a subscriber may wish to place out of his 'home base' area. However, when used on a regular and reoccurring basis, which is not unusual, such service has led to serious abuses resulting in the overloading of channels and extreme system congestion, all to the detriment of the full-time subscribers in that particular area."

J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., E. Ronald Beeks, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Rollie R. Rogers, Colorado State Public Defender, Norman R. Mueller, Deputy State Public Defender, Denver, for defendant-appellant.

STERNBERG, Judge.

This is an appeal of a first degree murder conviction in which the principal issue is the propriety of the trial court's refusal to permit expert testimony offered to delineate in general the various factors that might affect the reliability of eyewitness identifications. Other issues raised are the suggestiveness of a lineup and failure to grant motions for mistrial based on alleged irregularities at the trial. We affirm the judgment of conviction.

At about 10 P. M. on the evening of January 14, 1973, Larry McVay and his cousin, Jeffrey Van Cura, returned to the McVay home after having attended a bas-

ketball game. McVay's wife was in her bedroom. McVay went to that room, removed his shirt, emptied his pockets, and then went to the kitchen to prepare a snack. He returned to the livingroom and as he and Van Cura were watching television, they heard a knock at the front door of the home. McVay answered and two men attempted to force their way into the house, stating that, "This is a stick up." As McVay tried to close the door, one of the intruders shot him, inflicting wounds that caused his death shortly thereafter.

Mrs. McVay heard the shot and entered the livingroom, but was forced to return to her bedroom accompanied by one of the intruders. That man searched a dresser and closet, seeking cash receipts of a business, which money he understood would be on the premises. However, he found only McVay's wallet from which he took $10. The second intruder remained in the livingroom with Van Cura. About 15 minutes later, their search for money from the business having proved fruitless, the intruders left their surviving victims in a bedroom, cut a telephone cord, and fled.

Some 14 months later, police officers who had been investigating the murder, contacted Mrs. McVay at her new home in Nebraska. They requested her to return to Colorado to view a lineup. Defendant was one of the six men in that lineup. A public defender was present representing defendant. Mrs. McVay identified the defendant as the man who had held her captive, basing this conclusion on his physical appearance and the sound of his voice. She was not able to identify the second intruder. Later that day, Mrs. McVay was shown a videotape of the lineup and she confirmed her identification of the defendant. Mr. Van Cura was unable to identify the defendant, but in another lineup did identify the second intruder.

Defendant's conviction at the trial was based upon Mrs. McVay's in-court identification as well as less direct evidence of defendant's involvement. One Rutherford testified that while in his presence, defendant was told that the manager of a certain business took money receipts home at night, and that defendant consulted a city directory and learned that Mr. McVay was the manager of that company. Rutherford also testified that defendant obtained McVay's home address by reference to a telephone directory and finally that the defendant had made reference to Rutherford concerning fur hats of the type that had been worn by the intruders and were later discarded by them.

### I.

The defense tendered as an expert witness a professor of psychology who specialized in the field of perception and memory. His testimony would have reviewed the various factors that might affect the reliability of eyewitness identifications. At the outset, we observe that this testimony was not being offered to attack directly Mrs. McVay's eyewitness testimony. The expert had no familiarity with Mrs. McVay. Thus, defendant's reliance on *United States v. Hiss*, 88 F.Supp. 559 (S.D.N.Y.1950), is misplaced. There a specific, direct attack was being made on the mental capacity of Whittaker Chambers, a witness.

Here, the purpose of the expert testimony was to inform the jury that a witness' ability to identify a suspect would be impaired by the passage of time and that a woman who is nearly an eyewitness to her husband's shooting, who sees him in a mortally wounded state, and who is held at gunpoint by his assailant, would likely be in such emotional turmoil that her identification of the assailant might be questionable.

█ The basic purpose for allowing expert testimony is to assist the jury by providing the expert's opinion on matters of which the average juror has little knowledge or experience. As discussed in *Mc-*

*Cormick on Evidence* § 13 (E. Cleary 2d ed.):

"The expert has something different to contribute [than does the witness who testifies on firsthand knowledge or observation]. This is a power to draw inferences from the facts which a jury would not be competent to draw. . . . [T]he subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman. . . ."

█ The expert testimony offered here falls short of these requirements. We do not reach the question of whether the field of the social sciences in which this testimony falls has attained that degree of certainty which renders it a proper subject for expert testimony. *Cf. People v. Alvarez,* Colo. 530 P.2d 506, and 2 S. Gard, *Jones on Evidence* § 14.9 (6th ed.). Rather, we hold that the tendered evidence, relating to factors that might have made Mrs. McVay's eyewitness identification questionable, is within the realm of the experience and common knowledge of a juror. Therefore, while such matters might well have constituted fertile areas of inquiry on cross-examination, and in particular for exposition during closing argument, it was not an abuse of discretion for the trial court to conclude that the opinion would not aid the jury in resolving an issue and to exclude the expert testimony on the subject. *See National Fuel Co. v. McNulty,* 65 Colo. 176, 177 P. 979, and 2 S. Gard, *Jones on Evidence* § 14.9 (6th ed.).

## II.

█ Defendant also contends that the lineup procedure leading to his identification by Mrs. McVay was so unduly suggestive as to violate his right to due process. He would therefore have us apply the *per se* exclusionary rule of *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, and hold that Mrs. McVay's in-court identification should not have been permitted. This we decline to do.

In *Phillips v. People,* 170 Colo. 520, 462 P.2d 594, our Supreme Court, in reliance on *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, set forth the test to be applied to such an allegation as:

"[W]hether the confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law. The answer to this question depends on the *totality of the circumstances* surrounding the confrontation." (emphasis supplied)

Defendant maintains that the "totality of the circumstances" here is that the police suggested to Mrs. McVay that one of the perpetrators of the crime was in the lineup, that her identification at the lineup was uncertain, that prior to this lineup she had tentatively selected other persons who were later cleared of involvement, and that the 14-month period between the crime and the lineup made her identification unreliable. Again, while these are all pertinent matters for cross-examination and argument to the jury, they are not grounds upon which an appellate court can or should interfere with the jury verdict. *See Sandoval v. People,* 180 Colo. 180, 503 P.2d 1020.

The record demonstrates that Mrs. McVay had ample opportunity to observe the man who confined her to her bedroom. Mrs. McVay and the officers conducting the lineup flatly denied making any statement that one of the perpetrators of the crime was definitely in that lineup. Mrs. McVay testified that she had not been prompted in her identification in any way and was positive of the identification both at the lineup and in court. This identification question was explored in detail by the trial court in a suppression hearing prior to trial, after which the court found no impermissible suggestiveness. Questions as to the accuracy of Mrs. McVay's memory due to the lapse of time and her emotional

state were properly left for resolution by the jury. *See Sandoval v. People, supra.*

### III.

Defendant also alleges that the trial court erred in denying several motions for mistrial. The allegations of this type meriting discussion are these:

First, a prosecution witness responded to a question in such a way as to indicate that defendant had a criminal record. During examination of the witness Rutherford by the district attorney, the following occurred:

"Q. Ron, how long have you known Hayward Curtis Lawson?

"A. Off and on for 18 years.

"Q. Where did you first meet him?

"A. We were in the county jail together."

Defendant objected and moved for a mistrial. At an *in camera* hearing on this motion, the district attorney made it clear to the satisfaction of the trial court that he had not anticipated such an answer, and thus this is not a case of prosecutorial misconduct. *See People v. Goldsberry,* 181 Colo. 406, 509 P.2d 801. The trial court sustained defendant's objection and instructed the jury to disregard the testimony.

We cannot disturb on review a trial court's denial of a motion for mistrial unless it is apparent that there was an abuse of discretion. *See People v. Lowe,* 184 Colo. 182, 519 P.2d 344. Since the district attorney did not act in bad faith, since a cautionary instruction was given, and since there was no further reference to the previous arrest or incarceration, there was no abuse of discretion in the denial of this motion for mistrial. *People v. Lowe, supra.*

Secondly, during the district attorney's rebuttal closing argument, he referred to the fact that "the evidence was uncontroverted" and that the evidence that defendant and his associate perpetrated the murder is "the only evidence you have heard." Defendant contends that these comments constitute an improper reference to defendant's constitutionally guarded right not to testify and that his motion for mistrial should have been granted. We disagree.

In *People v. Todd,* Colo., 538 P.2d 433, the Supreme Court stated that the basic question is "whether the comment and context was calculated . . . to direct the attention of the jury to the . . . failure to testify . . . ." In that case, in his closing argument, the prosecutor made remarks virtually identical to those in question here, and the court found that such comments were not an improper comment on defendant's right to remain silent. The *Todd* ruling impels our conclusion that the district attorney's comments did not amount to a violation of defendant's constitutional right to remain silent.

We have considered defendant's other allegations of error and find them to be without merit.

Judgment affirmed.

ENOCH and RULAND, JJ., concur.