The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Robert Brad LANARI, Defendant–Appellant.

No. 87CA0581.

Colorado Court of Appeals, Div. IV.

Dec. 7, 1989.

Rehearing Denied Sept. 27, 1990.

Certiorari Granted May 20, 1991.

**400**

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Hope P. McGowan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Michael J. Heher, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge PLANK.

Defendant, Robert Lanari, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree murder, attempted first degree murder, and four counts of violent crime. We affirm.

Defendant and his wife separated in March 1986, causing defendant to become distraught. After the separation, the wife established an intimate relationship with a man who was also one of defendant's best friends.

One morning the following June, defendant's wife told him of her relationship with the friend. This revelation increased the defendant's distress, and he arranged to meet with the friend and his wife at the friend's house that evening. A short time after the meeting began, defendant drew a weapon and shot the friend and his wife. The friend's wound was fatal.

Defendant claims that certain actions taken at the meeting between his wife and the friend angered him and caused the shootings. And, consonant with this claim, defendant, prior to trial, endorsed a psychiatric witness to testify about, among other things, heat of passion manslaughter. However, the trial court granted the People's motion to strike the psychiatrist as a

witness. In granting the motion, the trial court determined that heat of passion manslaughter can be readily understood by a jury and, consequently, that an expert witness is unnecessary and usurps the decision-making role of the jury.

**I.**

Defendant maintains the trial court erred in striking the witness. We disagree.

Expert testimony is not admissible to explain matters within the experience and common knowledge of jurors and the determination whether expert testimony will aid the jury in resolving an issue is a matter within the sound discretion of the trial court. *People v. Beaver*, 725 P.2d 96 (Colo.App.1986).

Here, the issue was whether defendant acted out of a sudden heat of passion which was caused by "serious and highly provoking acts" of wife and decedent that were sufficient to excite "an irresistible impulse in a reasonable person." *See* § 18-3-104, C.R.S. (1986 Repl.Vol. 8B). The trial court implicitly concluded that the factual and legal issues were of such a nature that the jury was competent to draw the correct conclusions.

We agree that the subject matter of irresistible impulse and heat of passion is not beyond the ken of the average layperson. Accordingly, the trial court did not abuse its discretion in excluding the psychiatrist from testifying. *See People v. Lawson*, 37 Colo.App. 442, 551 P.2d 206 (1976); *McCormick on Evidence* § 13 (E. Cleary 3d ed. 1972).

**II.**

As part of its pretrial discovery, the People interviewed the psychiatrist. During cross-examination and over defense counsel's objection, the People repeatedly impeached defendant with inconsistent statements that he had made to the psychiatrist. Defendant claims that since the psychiatrist did not testify, the use of such statements violated both his Sixth Amendment right to effective assistance of coun-

sel and his attorney-client privilege. We disagree.

■ Under certain circumstances, exclusion of statements made to experts or their statements is justified under either the Sixth Amendment right to effective assistance of counsel, *Hutchinson v. People*, 742 P.2d 875 (Colo.1987), or the attorney-client privilege, *Miller v. District Court*, 737 P.2d 834 (Colo.1987).

Here, two factors militate in favor of the use of the statements for impeachment. First, the statements were provided to the People under Crim.P. 16 and, thereby, lost their confidential nature. Second, even if defendant's statements made to the psychiatrist were protected as part of his Sixth Amendment right to effective assistance of counsel, or as part of his attorney-client privilege, since his trial testimony contradicted those statements, those statements could be used to impeach him.

■ Generally, defendant's prior inconsistent statements, even if obtained in violation of the Constitution so as to be inadmissible in the prosecution's case-in-chief, are admissible to impeach a defendant's testimony. *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); *Oregon v. Haas*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

■ We further hold that if, as here, the prosecution has discovered defendant's statements to experts under Crim.P. 16, use of such statements to impeach a defendant after he has testified does not violate the attorney-client privilege.

A defendant's right to testify does not encompass a right to commit perjury. Furthermore, the interest of the state in the truth seeking process outweighs defendant's constitutional privilege interest in protecting such statements. *See People v. Cole*, 195 Colo. 483, 584 P.2d 71 (1978).

Therefore, we conclude that the trial court did not err when it permitted cross-examination of defendant concerning his statements to the psychiatrist.

III.

■ Defendant next argues that the trial court erred in not submitting to the jury his tendered instructions that further defined the trial court's "heat of passion manslaughter" instruction. The language in the court's heat of passion manslaughter instruction was properly based on § 18–3–104(1)(c), C.R.S. (1986 Repl.Vol. 8B) and *COLJI–Crim*. No. 9:08 (1983), and is susceptible to general understanding by persons of common intelligence and need not be further defined. *See People v. Deadmond*, 683 P.2d 763 (Colo.1984). The instructions as a whole adequately informed the jury as to the offense. Accordingly, the trial court's decision not to further define the instruction was not erroneous. *See People v. Deadmond, supra*.

IV.

■ Defendant next argues that, since there was not a separate instruction for crime of violence, his conviction thereon must be set aside. We disagree.

Here, the verdict form required a finding concerning the use of a deadly weapon on the crime of violence charge.

Although we agree that it would have been better to set out the exact elements of the crime in a separate instruction, we determine that the instructions as a whole were adequate, *see Brunner v. Horton*, 702 P.2d 283 (Colo.App.1985), and required the jury to determine that defendant used a gun. We also note that it is uncontested that defendant brought a weapon to decedent's home, shot the friend three times, and shot his wife once.

The others issues raised by the defendant are without merit.

Judgment affirmed.

REED, J., concurs.

DUBOFSKY, J., dissents.

Judge DUBOFSKY dissenting.

I respectfully dissent.

## I.

The trial court's decision to exclude the psychiatrist as an expert witness was an abuse of discretion.

A defendant has a fundamental right under the due process clauses of the United States and Colorado Constitutions to present witnesses and relevant evidence in defense of the charges against him. *See Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). A court cannot prevent a defendant from establishing his innocence by arbitrarily excluding witnesses from testifying. *See People v. Bueno*, 626 P.2d 1167 (Colo.App.1981).

An expert witness' analysis of evidence is often as critical to a case as the evidence itself. A jury evaluates the evidence for the inferences and conclusions to be drawn from it, and an expert witness can be a critical aid in assisting the jury in this task. *Miller v. District Court*, 737 P.2d 834 (Colo.1987).

As the *Miller* court noted:

"[P]sychiatry has come to play a 'pivotal role' in criminal proceedings where the defendant's mental condition is in issue."

Indeed, as the United States Supreme Court in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), stated:

"When the state has made the defendant's mental condition relevant to his criminal culpability and to the punishment he might suffer, the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal his defense."

Here, the trial court's exclusion of the psychiatric witness erroneously precluded an important defense witness from providing expert testimony as to defendant's state of mind, regarding, but not limited to, the elements of heat of passion.

Both *Becksted v. People*, 133 Colo. 72, 292 P.2d 189 (1956) and *People v. Diaz*, 644 P.2d 71 (Colo.App.1981) stand for the proposition that, when a defendant may be convicted of manslaughter or murder, the refusal of the trial court to allow expert psychiatric testimony on the issue of defendant's state of mind is error. In my view,

*Becksted* and *Diaz* are dispositive here. In *Diaz*, the court held that the psychiatric expert opinion was admissible to show defendant's state of mind at the time of the killing even though this was the ultimate question for the jury. *See also Ferrin v. People*, 164 Colo. 130, 433 P.2d 108 (1967); *People v. Martinez*, 43 Colo.App. 419, 608 P.2d 359 (1979).

Here, the trial court determined that a juror understands, without expert assistance, the state of mind involved in the charges brought against defendant. I cannot agree with such a sweeping conclusion.

CRE 702 states that an expert can testify if that testimony will aid the jury. An expert opinion should only be excluded if it is superfluous, a waste of a jury's time, and not helpful. *Robertson v. McCloskey*, 676 F.Supp. 351 (D.D.C.1988).

In determining that a psychiatrist could not assist jurors in evaluating heat of passion manslaughter concepts and in otherwise evaluating defendant's state of mind, the majority and trial court misperceive both the purpose of CRE 702 and the ability of psychiatrists to explain complex psychological concepts to the jury.

CRE 702 is an acknowledgement that, in an increasingly complex society, expert witnesses will, and should, be involved in analyzing and explaining difficult matters to both juries and judges. The state of mind of a person charged with homicide and passionate manslaughter is clearly an example of such a complex matter. *See People v. Diaz, supra; Becksted v. People, supra.*

Typically, a psychiatrist's education includes four years of medical school and at least a three year residency. This is only the beginning of a life long inquiry into the myriad workings of the human mind. Because of this training and experience, a psychiatrist is able to assist jurors, who lack such training, in evaluating the concepts found in murder with deliberation and heat of passion manslaughter. Therefore, under CRE 702, it was an abuse of discretion to exclude the psychiatrist's testimony.

## II.

Furthermore, in my view, the People's cross-examination of defendant with statements made by him to the psychiatrist was error. In *Miller v. District Court, supra,* the court determined that, unless defendant signifies an intention to use expert testimony at trial, the defendant's right to effective assistance of counsel is subverted when at trial the prosecution uses an expert's report which has been prepared for the defense.

The *Miller* holding relies in part on ABA, *Criminal Justice Mental Health Standards,* Standard 7–3.3(b) (1984) in not permitting the use by the prosecution of statements made by defendant to a psychiatrist if, as here, the psychiatrist does not testify and the prosecution was not restricted in obtaining other psychiatric testimony. The commentary to Standard 7–3.3(b) articulates several policy reasons necessitating this confidentiality: (1) waiver of confidentiality would have a 'chilling effect' upon a client's willingness to confide in counsel or defense consultants; (2) inherent prejudice results if the trier of fact learns that a mental health or mental retardation professional originally was employed by the defense; (3) if waiver is recognized the defense in essence would assist the prosecution in discharging its burden of proof; (4) the defendant would be inhibited from consulting any mental health or mental retardation professionals with conflicting views for fear of generating prosecution witnesses; and (5) the defense would be inhibited from consulting any mental health or mental retardation professionals even though consultation might be crucial to the case. *State v. Mingo,* 77 N.J. 576, 392 A.2d 590 (1978).

I would hold that the confidentiality of the communication between defendant and his examining psychiatrist is not waived for purposes of use at trial because the compulsory discovery processes of the court mandate its release to the prosecution. The information obtained by the interview between the prosecutor and the psychiatrist here is comparable to the expert report in *State v. Mingo.*

Furthermore, even if the attorney-client privilege is waived here, I would hold that the use of defendant's statements made to the prosecutors as a result of compulsory discovery where the expert does not testify violates defendant's Sixth Amendment right to effective assistance of counsel. The prosecution did not call the psychiatrist in its case-in-chief; rather, it cross-examined defendant with statements made to the psychiatrist which it discovered under Crim.P. 16.

Several courts have rejected the use of this testimony for impeachment. In *State v. Pratt,* 284 Md. 516, 398 A.2d 421 (1979), the court found that the prosecution's use of a defense expert as a rebuttal witness violated the attorney-client privilege and also noted the possible impact on Sixth Amendment rights. *See also State v. Moore,* 45 Or.App. 837, 609 P.2d 866 (1980); *State v. Kociolek,* 23 N.J. 400, 129 A.2d 417 (1957). These courts found that the prosecution's use of a defense psychiatrist as rebuttal witness violated the attorney-client privilege.

In *Hutchinson v. People,* 742 P.2d 875 (Colo.1987), the court stated:

"We believe the confidentiality and loyalty of expert consultants traditionally enjoyed by defendants and defense counsel is a crucial element in the effective legal representation of the defendant. A relationship of trust permits the defendant, counsel and the expert to engage in a full and frank interchange, affording counsel an accurate and honest assessment of the defendant's case. Without such a relationship, the assistance of the expert, and thus defense counsel, is likely to be ineffective.

Consequently, the prosecution should not be permitted to intrude upon this relationship as a matter of course and convert a defense expert into a potential witness-in-chief against the defendant. We can imagine few intrusions more disruptive to the efforts of defense counsel."

I consider protecting defendant's Sixth Amendment right and his attorney-client privilege to be the basis of analysis in both

*Miller v. District Court* and *Hutchinson v. People.* I would hold that, when the expert does not testify, the use of such statements, when obtained through compulsory discovery process, is improper even for impeachment purposes, because it undermines defendant's Sixth Amendment right to effective assistance of counsel and his attorney-client privilege.

Finally, besides these specific considerations, I find it fundamentally inequitable to deprive defendant of a potential shield inherent in the psychiatric evidence and then to use that evidence as a weapon against him.

I would reverse and remand for new trial.