Robert Brad LANARI, Petitioner,

v.

PEOPLE of the State of Colorado,
Respondent.

No. 90SC646.

Supreme Court of Colorado,
En Banc.

March 10, 1992.

Rehearing Denied April 6, 1992.

David F. Vela, Colorado State Public Defender, Michael J. Heher, Deputy State Public Defender, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

We granted certiorari to review the judgment of the Colorado Court of Appeals in *People v. Lanari,* 811 P.2d 399 (Colo.App. 1989), affirming jury verdicts convicting Robert Brad Lanari, the defendant, of offenses of first degree murder,[1] attempted first degree murder,[2] and four counts of crime of violence.[3] When, prior to trial, the defendant sought to introduce expert psychiatric testimony to describe characteristics of the offense of heat of passion manslaughter, section 18–3–104(1)(c), 8 C.R.S. (1978 & 1985 Supp.),[4] and to establish that at the time the defendant participated in the events underlying his prosecution his mental state was consistent with the state of mind requisite for that offense, the prosecution filed a motion to prohibit the introduction of such testimony. The trial court granted the motion, and later denied a motion filed by the defendant to prohibit prosecutorial use for impeachment purposes of statements made by the defendant to the psychiatrist. The Court of Appeals affirmed those rulings. We affirm in part, reverse in part, and remand with directions.

I

On June 10, 1986, the defendant shot and severely wounded his estranged wife, Beth Lanari, and killed his friend, Mark Ferguson. The Lanaris were married in 1982. When their marriage began to deteriorate in early 1986, Beth Lanari informed the defendant that she wished to obtain a separation and moved out of the family residence. Soon thereafter she and Ferguson developed a close personal relationship.

On May 30, 1986, the Lanaris filed a joint petition for dissolution of their marriage.

1. § 18–3–102, 8B C.R.S. (1986).

2. § 18–2–101, 8B C.R.S. (1986).

3. § 16–11–309, 8A C.R.S. (1986).

4. The offense was then defined as follows:
 (1) A person commits the crime of manslaughter if:
 . . . .
 (c) He knowingly causes the death of another person under circumstances where the act causing the death was performed, not after deliberation, upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the person killing sufficiently to excite an irresistible passion in a reasonable person; but if between the provocation and the killing there is an interval sufficient for the voice of reason and humanity to be heard, the killing is murder. § 18–3–104(1)(c), 8 C.R.S. (1978 & 1985 Supp.).

The defendant, who was depressed and, according to some evidence admitted at trial, exhibited suicidal tendencies, desired a reconciliation.

On June 10, 1986, the defendant's wife informed him of her relationship with Ferguson and the defendant agreed to meet her at Ferguson's residence that evening to discuss the situation. The defendant arrived wearing a heavy coat. The three conversed at a dining room table, and at some point during the heated discussion the defendant asked his wife to continue in the marriage. She refused, indicated that she preferred her new relationship, and asked the defendant why he was wearing a coat. He stood up, produced a handgun, and stated that he was going to shoot Ferguson and then kill her.

Ferguson began to run, and the defendant fired two shots, one of which struck Ferguson. The defendant chased Ferguson outside, shot him two more times, and reentered the house. He then grabbed his wife by her hair, shot her in the neck, and fled. The defendant testified at trial that prior to leaving the house he placed the gun to his head and pulled the trigger, but that no bullets remained in the chamber.

On June 17, 1986, an information was filed against the defendant alleging six offenses, including, *inter alia*, first degree murder and attempted first degree murder. After entering not guilty pleas, the defendant filed a motion to endorse expert witnesses containing a notification that he would rely on defenses of self defense, intoxication and heat of passion. The defendant subsequently endorsed Dr. Dean J. Plazak, a psychiatrist who had been retained by defense counsel to assist in preparing defenses to the charges and who had conducted an examination of the defendant, as an expert witness. After interviewing Dr. Plazak and obtaining limited information concerning his potential testimony, the prosecutor filed a motion in limine to prohibit Dr. Plazak from testifying as an expert witness. The trial court granted the motion.

At trial, the defendant testified on his own behalf. Prior to the commencement of cross-examination, the defendant requested the trial court to prohibit the prosecution from referring to any statements made by the defendant to Dr. Plazak, asserting that any such reference would violate the attorney-client privilege established by section 13-90-107(1)(b), 6 C.R.S. (1973 & 1986 Supp.), and the defendant's constitutionally protected right to counsel and privilege against self-incrimination. The trial court denied the motion, and the prosecution then cross-examined the defendant by reference to statements he had made to Dr. Plazak which were inconsistent with the defendant's direct testimony. The jury was instructed on the elements of heat of passion manslaughter, but found the defendant guilty of first degree murder with respect to the death of Ferguson.

## II

As previously noted, the defendant endorsed Dr. Plazak as an expert witness. During pretrial discovery, pursuant to the disclosure requirements of Rule 16 of the Colorado Rules of Criminal Procedure (Crim.P. 16),[5] the prosecution interviewed Dr. Plazak and obtained several statements made by the defendant during an examina-

5. Crim.P. 16(II) provides in pertinent part as follows:

**(b) Medical and Scientific Reports.**

Subject to constitutional limitations, the trial court may require that the prosecuting attorney be informed of and permitted to inspect and copy or photograph any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons.

**(c) Nature of Defense.**

Subject to constitutional limitations, the trial court may require that the prosecuting at-

torney be informed of the nature of any defense which defense counsel intends to use at trial and the names and addresses of persons whom defense counsel intends to call as witnesses in support thereof. Upon receipt of the information required by this subsection (c), the prosecuting attorney shall notify defense counsel of any additional witnesses which he intends to call to rebut such defense within a reasonable time before trial after their identity becomes known.

Crim.P. 16, (II)(b) and (c), 7B C.R.S. (1984).

tion conducted by the doctor at the request of the defendant's attorney. The defendant asserts that in view of the trial court's order excluding Dr. Plazak's testimony, the prosecution's use of the defendant's statements for impeachment purposes violated the attorney-client privilege established by section 13–90–107(1)(b), 6 C.R.S. (1973 & 1986 Supp.), the defendant's right to effective assistance of counsel and the defendant's privilege against self-incrimination. We disagree.

■ The statute defining the attorney-client privilege states in pertinent part as follows:

(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:

. . . .

(b) An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, paralegal, legal assistant, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity.

§ 13–90–107(1)(b), 6 C.R.S. (1973 & 1986 Supp.). The privilege is personal to the client, *Mountain States Tel. & Tel. v. DiFede*, 780 P.2d 533 (Colo.1989); *Law Offices of Bernard D. Morley v. MacFarlane*, 647 P.2d 1215 (Colo.1982), and therefore may be waived by the client. *A, B, C, D, E, F, G and H v. District Court*, 191 Colo. 10, 550 P.2d 315 (1976); *Losavio v. District Court*, 188 Colo. 127, 533 P.2d 32 (1975). The trial court and the Court of Appeals concluded that by listing Dr. Plazak as a potential witness pursuant to Crim.P. 16(II)(b), thus rendering him available for pretrial interview by the prosecu-

tion, the defendant impliedly waived the attorney-client privilege with respect to the information obtained by the prosecution during the course of such interview. We agree with that conclusion.

■ The discovery rules in criminal proceedings are designed to further the truth-seeking process. *See* Crim.P. 2, 7B C.R.S. (1984). By permitting the prosecution and defense to obtain relevant information prior to trial, the rules also promote fairness in the criminal process by reducing the risk of trial by ambush. *People v. Small*, 631 P.2d 148 (Colo.1981); *People v. District Court*, 187 Colo. 333, 531 P.2d 626 (1975). To the extent the requirements of Crim.P. 16 purport to require disclosure of information arguably protected from disclosure by statute or court rule, a party asserting such protection may object to such discovery.[6]

■ The defendant's statements to Dr. Plazak are to be deemed statements to the defendant's attorney for purposes of the attorney-client privilege. *Miller v. District Court*, 737 P.2d 834 (Colo.1987). However, the privilege applies only to statements made in circumstances giving rise to a reasonable expectation that the statements will be treated as confidential. *United States v. Noriega*, 917 F.2d 1543, 1551 (11th Cir.1990); *United States v. Liebman*, 742 F.2d 807, 810 (3d Cir.1984); *United States v. Melvin*, 650 F.2d 641, 645 (5th Cir.1981). Furthermore, statements made initially in confidence to an attorney lose the shield of the attorney-client privilege if the statements are subsequently disclosed to third parties. *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir.1984); *see Mauro v. Tracy*, 152 Colo. 106, 380 P.2d 570 (1963).

In this case, the defendant voluntarily endorsed Dr. Plazak as a witness, did not object to the prosecution's interview of the witness, and did not request the trial court to enter protective orders with respect to

---

**6.** For example, either the prosecution or the defendant may assert that information constituting attorney work product should not be disclosed. *See, e.g., People v. District Court*, 790 P.2d 332, 335 (Colo.1990); *People v. Small*, 631 P.2d 148, 159 (Colo.1981); *People v. District Court*, 187 Colo. 333, 342–43, 531 P.2d 626, 631 (1975).

any statements of the defendant obtained during the course of that interview. The statements lost the cloak of confidentiality essential to the statutory attorney-client privilege when the defendant endorsed the physician as a defense witness, thus authorizing disclosure of those statements pursuant to the discovery process.

■ However, the disclosure of information by an accused required by Crim.P. 16(II) is expressly subject to "constitutional limitations." Crim.P. 16(II)(b)–(c), 7B C.R.S. (1984). Absent a waiver thereof, the accused retained the right to assert that prosecutorial use of his statements to Dr. Plazak violated his constitutional rights. It is well-established that any waiver of the right to counsel or of the privilege against self-incrimination must be knowing, intentional and unequivocal. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *King v. People,* 728 P.2d 1264 (Colo.1986). A decision by a defendant to introduce evidence for limited purposes does not constitute an unequivocal waiver of the right to object on constitutional grounds to the use of such evidence for other purposes. For example, this court has recognized that a decision to present testimony by a defense-retained expert in a hearing addressing a defendant's pretrial Crim.P. 32(b) motion to set aside a former guilty plea does not constitute a waiver of the defendant's right to object to the prosecution's effort to call that expert at trial to testify against the defendant in the prosecution's case-in-chief. *Perez v. People,* 745 P.2d 650, 652 (Colo.1987).

■ In this case, the defendant elected to endorse Dr. Plazak as a witness to establish a defense. That act did not constitute a knowing and unequivocal waiver of the defendant's right to assert that prosecutorial efforts to impeach his trial testimony by means of statements he made to the doctor violated his right to counsel and his privilege against self-incrimination.

■ The right to counsel established by the Sixth Amendment to the United States Constitution and article II, section 16, of the Colorado Constitution includes the right to effective assistance of counsel in the preparation of a case. *Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *Hutchinson v. People,* 742 P.2d 875, 880 (Colo. 1987); *People v. Norman,* 703 P.2d 1261, 1272 (Colo.1985). In *Hutchinson,* we concluded that a defense attorney's responsibility to provide effective legal assistance often requires consultation with an expert and that when such consultation occurs the prosecution is constitutionally prohibited from calling such expert as a witness in the prosecution's case-in-chief, "[a]bsent compelling justification or waiver." *Id.* at 885. This caveat recognized that the basic protections afforded by the right to effective assistance of counsel, admittedly a critical component of the nucleus of constitutional guarantees that assures fairness in criminal proceedings, may in limited circumstances be abridged when juxtaposed with other fundamental concerns of constitutional dimension affecting the fairness of such proceedings.

■ Although the prosecution did not call Dr. Plazak to testify as a witness, the prosecution's use of statements made by the defendant to Dr. Plazak to impeach the defendant's testimony directly implicated the defendant's right to counsel. A physician's records containing references to a defendant's statements are the equivalent of an attorney's notes reflecting statements of a client. To allow prosecutorial use of such information generally during the trial of criminal charges would undermine a defense attorney's ability to obtain pertinent information about the accused and, therefore, would adversely impact the attorney's ability to render effective legal assistance to her or his client. *Hutchinson v. People,* 742 P.2d 875, 881 (Colo.1987); *People v. White,* 182 Colo. 417, 421–22, 514 P.2d 69, 71 (1973).

■ Recognition that the defendant did not waive his right to assert a violation of the right to counsel does not answer the question of the scope of the protection afforded to him by that right in the circum-

stances of this case. The defendant contends that after the trial court excluded Dr. Plazak's testimony any statements he made to the doctor were insulated from any use by the prosecution because they were improperly obtained or, alternatively, because such absolute protection is essential to afford meaning to the constitutional guarantee of the right to counsel. We do not agree.

The prosecution's knowledge of the defendant's statements resulted from the appropriate exercise of rights to discovery under applicable rules of criminal procedure. Those rules, as we have noted, fully protect the defendant's right to assert constitutionally based objections to the use of information disclosed pursuant to the discovery process. The statements were made voluntarily by the defendant; they were not obtained by prosecutorial coercion, intimidation or other constitutionally impermissible means. The prosecution did not forfeit its right to introduce at trial relevant evidence appropriately obtained through the discovery process by exercising its distinct right to object to the admissibility of Dr. Plazak's testimony under applicable rules of evidence.

 The defendant's argument that the right to effective assistance of counsel is inherently absolute is untenable. This court has frequently acknowledged the ability of prosecutors to use for impeachment purposes voluntary statements of a defendant which would be inadmissible as evidence in the prosecution's case-in-chief. *People v. Branch,* 805 P.2d 1075 (Colo. 1991) (prosecutorial use for impeachment purposes of defendant's voluntary statements to psychiatrist during competency examination not violative of defendant's Fifth or Sixth Amendment rights); *People v. Allen,* 193 Colo. 526, 568 P.2d 56 (1977) (defendant's statement to psychiatrist admissible for impeachment purposes); *People v. Pearson,* 190 Colo. 313, 546 P.2d 1259 (1976) (prosecutorial use for impeachment purposes of defendant's statements to court-appointed psychiatrist does not violate defendant's privilege to testify or privilege against self-incrimination); *People v.*

*Cole,* 195 Colo. 483, 584 P.2d 71 (1978) (voluntary statements by defendant at providency hearing admissible for impeachment purposes at trial subsequent to withdrawal of guilty plea). Our decisions are in accord with conclusions consistently reached by the United States Supreme Court in various constitutional contexts. *Michigan v. Harvey,* 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990) (no Sixth Amendment violation); *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (no Fifth Amendment violation); *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980) (no Fourth Amendment violation); *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) (no Fifth Amendment violation); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (no Fifth Amendment violation). *See Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) (no Sixth Amendment violation). By exercising his right to testify, the defendant in essence forfeited his right to object to the use of voluntary statements previously made by him that conflicted with his sworn testimony.

 Underlying this rule of limited admissibility is the recognition that the search for truth is a fundamental characteristic of criminal proceedings which, absent rules mandated directly by federal or state constitutional provisions, should be encouraged rather than impeded; the acknowledgement that false or perjurious testimony by a defendant would subvert that essential function; and the conclusion that if the prosecution were prohibited from utilizing for impeachment purposes voluntary statements that contradict a defendant's testimony at trial, no effective means would be available to prevent the defendant from testifying falsely. *See, e.g., Michigan v. Harvey,* 494 U.S. 344, 351, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990); *Oregon v. Hass,* 420 U.S. 714, 722–23, 95 S.Ct. 1215, 1220–21, 43 L.Ed.2d 570 (1975); *People v. Branch,* 805 P.2d 1075, 1081 (Colo.1991). The defendant in effect urges us to reject the reasons upon which

the rule is based. We find those reasons persuasive, and adhere to the rule.

■ The defendant's arguments respecting alleged violations of his privileges against self-incrimination secured by the Fifth Amendment to the United States Constitution and article II, section 18, of the Colorado Constitution parallel his arguments with respect to asserted violations of his constitutionally protected rights to effective assistance of counsel. For the reasons articulated in support of our conclusion that the prosecution's use for impeachment purposes of the challenged statements did not violate the defendant's right to effective assistance of counsel, we also hold that the use of those statements did not violate his constitutionally protected privileges against self-incrimination. The defendant's ability to assert those privileges remained available to him until he elected to present testimony to the jury that contradicted statements he had voluntarily made to Dr. Plazak. At that point in the trial proceedings the prosecution, exercising its responsibility to ensure the integrity of the truth-seeking function of criminal adjudication, was entitled to impeach the defendant by means of his prior inconsistent voluntary statements. *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *People v. Branch*, 805 P.2d 1075 (Colo.1991); *LeMasters v. People*, 678 P.2d 538 (Colo.1984); *People v. Cole*, 195 Colo. 483, 584 P.2d 71 (1978).

### III

The defendant asserts that in prohibiting Dr. Plazak from presenting expert testimony the trial court abused its discretion. In view of the uncertainty disclosed by the record concerning the trial court's ruling, we conclude that further trial court proceedings are necessary to ensure adequate resolution of this critical question.

■ The admissibility of expert testimony is governed by Rule 702 of the Colorado Rules of Evidence (CRE 702), which states as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

CRE 702, 7B C.R.S. (1984). Trial courts have broad discretion to determine the admissibility of expert testimony pursuant to CRE 702, and the exercise of that discretion will not be overturned in the absence of manifest error. *People v. Williams*, 790 P.2d 796, 798 (Colo.1990); *People v. DeLuna*, 183 Colo. 163, 165, 515 P.2d 459, 460 (1973). *See King v. People*, 785 P.2d 596, 603–604 (Colo.1990). *See also Krucheck v. State*, 702 P.2d 1267 (Wyo.1985); *People v. Beaver*, 725 P.2d 96 (Colo.App.1986). Thus the fact that an expert witness may be able to convey relevant information to a jury is not determinative of questions concerning the admissibility of such testimony pursuant to CRE 702.

CRE 702 requires the trial court to determine whether proffered evidence will assist the fact finder to either understand other evidence or to determine a fact in issue. Thus the pivotal question trial courts must answer when exercising discretion concerning the admissibility of proffered expert testimony pursuant to CRE 702 is whether " '[o]n *this subject* can a jury from *this person* receive appreciable help?' " *People v. Williams*, 790 P.2d 796, 798 (Colo.1990), *quoting* J. Weinstein & M. Berger, 3 *Weinstein's Evidence* ¶ 702[01], at 702–07 to 702–08 (1988) (emphasis in original) (quoting 7 *Wigmore on Evidence* § 1923 at 21 (3d ed. 1940)). As noted by an advisory committee note to Rule 702 of the Federal Rules of Evidence, which rule is identical to CRE 702, the test involves a common sense inquiry: whether an untrained lay person would be qualified to determine a particular issue "intelligently and to the best possible degree without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed. R.Evid. 702 advisory committee's note,

quoting Ladd, *Expert Testimony,* 5 Vand. L.Rev. 414, 418 (1952); *accord, People v. Williams,* 790 P.2d at 798 (quoting from the advisory committee note). *See* E. Cleary, *McCormick on Evidence* § 13, at 33 n. 9 (3d ed. 1984).

▊ When an objection is lodged with respect to proposed expert testimony, a trial court must be sufficiently apprised of the nature and substance of such testimony to exercise its discretion pursuant to our rules of evidence. An offer of proof by the proponent of the evidence is designed to serve that function. CRE 103(a)(2). *See People v. Bowers,* 801 P.2d 511, 522 (Colo. 1990); *State v. Dixon,* 668 S.W.2d 123, 126 (Mo.App.1984). An offer of proof also serves the important purpose of establishing a basis in the record for appellate review of the trial court's ultimate ruling. *See McQuaig v. McCoy,* 806 F.2d 1298, 1301–02 (5th Cir.1987) (interpreting Rule 103(a)(2) of the Federal Rules of Evidence).

▊ At the hearing held to determine the prosecution's motion to exclude Dr. Plazak's testimony, the prosecutor suggested that the defendant might wish to make an offer of proof to establish the nature of the proposed testimony. When the trial court asked for the defendant's response to that suggestion, the defendant's attorney initially stated, "I don't think we have to divulge that at this time...." However, when the trial court suggested that Dr. Plazak might be asked such questions as whether the defendant acted under a heat of passion, what is the general nature of provocation, and what the defendant told the doctor, the following colloquy occurred:

> [DEFENSE ATTORNEY]: There's a possibility he will be testifying as to heat of passion.
>
> THE COURT: Heat of passion? What it is, whether Lanari had it on that date or—
>
> [DEFENSE ATTORNEY]: All of that.
>
> THE COURT: All of that?
>
> [DEFENSE ATTORNEY]: I think he can testify as an expert as to what heat of passion is, how one arrives at it, and how it specifically fits with Mr. Lanari.

Defense counsel then reiterated that Dr. Plazak would testify with respect to the defendant's state of mind and would relate statements made to him by the defendant to establish the basis for that opinion.

At the outset of its oral ruling on the prosecution's motion, the trial court observed that neither the defendant nor the prosecutor had "disclosed the nature of Dr. Plazak's testimony." The trial court made a similar comment prior to stating its final conclusions of law. The record thus suggests that the trial court was not sufficiently certain about the nature and substance of Dr. Plazak's proposed testimony to exercise its discretion pursuant to CRE 702. In such circumstances, additional questioning by the trial court would have been appropriate, pursuant to CRE 103(b), to clarify that uncertainty.

However, the trial court elected not to clarify its understanding of the nature of the proposed testimony. Instead, it articulated several personal views concerning the offense of heat of passion manslaughter and the responsibility of individuals to act reasonably. It initially commented that in its view "no passion is irresistible in the true sense of the term, in the absence of insanity or mental impairment," illustrating this view by references to persons who "resist" various temptations, passions, and even physical torture. It then observed that yielding to passion is legally permissible in some circumstances, depending on the nature of the provocation, and that questions of when such conduct is justified are matters involving "social policy" or "moral judgment[s] to be made by the trier of fact," and not a "medical diagnosis" or a "psychiatric opinion." Again suggesting that succumbing to provocation "really constitutes impaired mental condition or legal insanity," and observing that the defendant did not raise those legal defenses, the trial court concluded generally that the proposed testimony "does not meet the test for admissibility of expert opinion [evidence]" because neither insanity nor impaired mental condition was raised as a defense and because the subject matter of the heat of passion manslaughter statute

was within the knowledge and common experience of jurors.

The trial court's comments concerning the relationship of the offense of heat of passion manslaughter to the defenses of insanity and impaired mental condition are irreconcilable with the statutory scheme, as reflected by the instructions actually given to the jury in this case. As defined by the General Assembly, that offense recognizes that in some circumstances conduct performed in a heat of passion is justified as a reasonable response to highly provoking circumstances. § 18–3–104(1)(c), 8 C.R.S. (1978 & 1985 Supp.). *See People v. Sanchez,* 820 P.2d 1103 (1991); *People v. Thomas,* 820 P.2d 656 (1991). Considering the entirety of the trial court's oral ruling, it is arguable that it applied its erroneous views concerning the relationship between the offense of heat of passion manslaughter and the defenses of insanity and impaired mental condition to its exercise of discretion rather than the test articulated by CRE 702.

■■■ The trial court also referred to the absence of any issue of insanity or impaired mental state, the non-technical nature of the language of the heat of passion manslaughter statute, and the fact that the subject matter of the statute is within the general knowledge and experience of jurors in support of its ruling. This language suggests that expert opinion evidence is never admissible in cases where a defendant may be convicted of heat of passion manslaughter. Such view is incompatible with our recognition in *Ferrin v. People,* 164 Colo. 130, 433 P.2d 108 (1967), that expert opinion evidence may be admissible to assist the jury in evaluating a particular defendant's conduct in light of the heat of passion manslaughter statute. While it is true that in *Ferrin* the expert testimony was also admissible to establish the defense of impaired mental condition, that circumstance does not undermine the force of our conclusion that the testimony was of assistance to the jury in its consideration of the elements of the offense of heat of passion manslaughter.[7]

However, we also reject the suggestion that expert opinion evidence is inevitably admissible in cases wherein the defendant asserts that particular conduct constituted heat of passion manslaughter. Trial courts possess broad discretion pursuant to CRE 702 to allow or prohibit testimony by expert witnesses in criminal cases. *People v. Williams,* 790 P.2d 796, 798 (1990). The exercise of that discretion requires consideration of numerous circumstances in addition to the elements of particular offenses in determining whether proffered evidence will appreciably assist the jury in performing its functions of evaluating evidence and making determinations of fact. Among those considerations are the nature and extent of other evidence in the case, the expertise of the proposed expert witness, the sufficiency and extent of the foundational evidence upon which the expert witness' ultimate opinion is to be based, and the scope and content of the opinion itself.

■■■ The test for admissibility contained in CRE 702 requires determination of whether proffered testimony will assist the jury. The degree of provocation necessary to produce an irresistible urge to kill in a reasonable person and the reactions of persons to highly provoking conduct are not necessarily matters within the common knowledge of laypersons. Furthermore, the fact that jurors may be able to understand the term "heat of passion" does not mean that a psychiatrist who because of experience and training is familiar with the reactions of people in general to highly provoking acts and is also familiar with the characteristics of a particular defendant is

---

7. In affirming trial court rulings prohibiting expert opinion testimony concerning a defendant's conduct with reference to heat of passion manslaughter charges, some courts have emphasized that the nature of that particular offense is within the common knowledge and experience of jurors. *See California v. Czahara,* 203 Cal. App.3d 1468, 250 Cal.Rptr. 836 (1988); *Kru-* *check v. State,* 702 P.2d 1267 (Wyo.1985); *State v. Ritchey,* 223 Kan. 99, 573 P.2d 973 (1977). To the extent such decisions suggest a per se rule of exclusion of expert testimony offered to describe characteristics of heat of passion manslaughter pursuant to CRE 702, we decline to adopt so rigid an approach.

incapable of aiding such jurors in performing the function of fact determination and evaluating particular conduct in a given case. *Ferrin v. People,* 164 Colo. 130, 433 P.2d 108 (1967). *Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972). *See Becksted v. People,* 133 Colo. 72, 292 P.2d 189 (1956); *People v. Young,* 825 P.2d 1004 (Colo.App.1991).

■ In the absence of a more specific explanation of the basis for the trial court's ultimate ruling, and in view of the trial court's erroneous observation concerning the nature of the offense of heat of passion manslaughter and its relationship to the defenses of insanity and impaired mental condition, we are unable to conclude whether the trial court applied the proper legal test established by CRE 702.[8] For that reason alone, the matter should be remanded to the trial court for further explanation of its ruling.

The record reveals an additional reason for further trial court consideration of the question of the admissibility of Dr. Plazak's testimony. At the outset of its ruling on the prosecution's motion in limine, the trial court stated that it would "assume" Dr. Plazak was prepared to opine whether the defendant was acting under sudden heat of passion. Because rulings excluding or permitting the introduction of expert opinion evidence under CRE 702 involve broad trial court discretion, we must examine with care the factual predicate upon which such ruling is based, whether such predicate is fully articulated by the trial court or whether it emerges from the offer of proof itself. *People v. Bowers,* 801 P.2d 511, 520 (Colo.1990).

■ In this case, the defendant's offer of proof established generally that Dr. Pla-

zak would discuss the statutory concept of heat of passion and render an opinion that the defendant's conduct on June 10, 1986, resulted from a state of mind compatible with that statutory phrase. The trial court, pursuant to CRE 103(b), questioned defense counsel to some extent and, as a result thereof, was also informed that the doctor would state the basis for his opinion. To the extent determination of whether the doctor's testimony would materially assist the jury's evaluation of the defendant's conduct on June 10, 1986, depended on the trial court's understanding of the precise basis for the doctor's ultimate opinion, those details should have been disclosed to the trial court. Having initiated questions pursuant to CRE 103(b), it was incumbent upon the trial court in these circumstances to obtain sufficient information concerning the content of the doctor's testimony to permit the exercise of discretion required by CRE 702.

In view of the importance of Dr. Plazak's proposed testimony to the defendant's theory of defense and the trial court's express recognition that its ruling was hampered by what it perceived to be a lack of a sufficiently detailed offer of proof, it is appropriate to remand the case to the trial court with directions to conduct further proceedings with respect to the prosecution's motion in limine to establish a sufficient basis for the exercise of discretion pursuant to CRE 702. If, after such proceeding, the trial court determines that the testimony was properly excluded, the judgment of conviction shall stand. If, however, the trial court concludes that the testimony should not have been excluded, it should set aside the judgment of conviction and order a new trial unless it is convinced

---

**8.** The Court of Appeals appeared to base its affirmance of the trial court's ruling on the ground that "the subject matter of irresistible impulse is not beyond the ken of the average layperson." *People v. Lanari,* 811 P.2d 399, 400 (Colo.App.1989). It is not necessary that a subject be completely outside the knowledge of jurors to justify the admission of expert testimony on such subject. *Hegarty v. Campbell Soup Co.,* 214 Neb. 716, 335 N.W.2d 758, 764 (1983); *Moore v. Farmers Ins. Exch.,* 111 Ill.App.3d 401, 413, 67 Ill.Dec. 181, 190, 444 N.E.2d 220, 229

(1982); Jack B. Weinstein & Margaret A. Berger, 3 *Weinstein's Evidence* ¶ 702[02], at 702–15 to 702–16 (1988). Insofar as language in our decision of *McNelley v. Smith,* 149 Colo. 177, 180, 368 P.2d 555, 557 (1962), suggests that an expert witness may in no circumstances render an opinion on a question of fact which might also be ascertained by a juror's application of common sense and experience, such language is incompatible with CRE 704 and is hereby disavowed.

that such error did not affect a substantial right of the defendant and was therefore harmless. CRE 103(a); *see* Crim.P. 52(a).

## IV

For the foregoing reasons, the judgment of the Court of Appeals is affirmed with respect to the conclusion that the prosecution was not prohibited from using for impeachment purposes statements made by the defendant to Dr. Plazak. The judgment is reversed with respect to the conclusion that the trial court did not err in prohibiting Dr. Plazak from testifying, and the case is remanded to the Court of Appeals with directions to remand the case to the trial court for the conduct of further proceedings consistent with Part III of this opinion.

VOLLACK, J., dissents.

ROVIRA, C.J., and ERICKSON, J., join in the dissent.

Justice VOLLACK dissenting:

The majority holds that the record does not permit this court to determine whether the trial court abused its discretion in excluding the testimony of Dr. Dean Plazak (Dr. Plazak). The majority remands the case to the trial court to conduct further proceedings with respect to the prosecution's motion *in limine* to exclude Dr. Plazak's testimony. I disagree. I believe that the record reveals a sufficient basis to support the trial court's exercise of discretion, and further proceedings will not create any additional new facts to determine whether Dr. Plazak's testimony is admissible under CRE 702. I therefore dissent from the majority's remand of the case to the trial court for further proceedings.

## I.

The defendant Brad Lanari spoke with his estranged wife, Elizabeth Lanari (Beth), early in the morning and at 12:30 p.m. on June 10, 1986, when she informed him of her involvement with the defendant's friend, Mark Ferguson (Mark). Even though Beth previously had a restraining order against the defendant, she invited

him to meet her and Mark at Mark's house later that day, at 7:00 p.m. Having not spoken to Beth in over one month, the defendant agreed.

The defendant left Brighton well before the scheduled meeting time. He had a gun in his possession when he left. He stopped and visited one friend and stopped again at Annette Ferguson's house, Mark's former wife. The defendant felt depressed and eventually broke down in front of Annette. As he left her house, he apologized to her for what he "was about to put [her] through."

The defendant arrived at the meeting place, Mark's house, and saw Beth cooking dinner. The defendant observed Mark touch Beth when asking her if she wanted a drink. The defendant sat down at a table, where Mark and Beth eventually joined him and discussed the status of their relationships. During the course of the ensuing discussion, Beth asked the defendant why he was wearing a heavy coat. The defendant then pulled out the gun. Mark flipped the table up and Beth threw her drink in the defendant's face. The defendant then shot Mark, who in turn fled the house. The defendant followed Mark outside and fatally shot him. The defendant returned to the house where he found Beth hiding underneath a counter. The defendant dragged Beth out from under the counter and into another room where he shot her. The defendant left the house and drove to Mexico.

## II.

The defendant was arraigned on June 17, 1986, and a preliminary hearing was held before Judge Hays on July 31, 1986. In November of 1986, Dr. Plazak met with the defendant twice, and, on November 19, the defendant endorsed Dr. Plazak as an expert witness. After receiving the endorsement, the prosecution arranged to meet with Dr. Plazak for one hour. Dr. Plazak charged the prosecution $125 an hour for his time.

On December 11, 1986, the prosecution filed a pretrial motion *in limine* to exclude

Dr. Plazak's testimony on the grounds that the subject matter as to which Dr. Plazak might testify—the various elements of manslaughter by heat of passion—did not require expert testimony. The prosecution also argued that the testimony would not be relevant and that there was not a sufficiently reliable body of scientific information supporting Dr. Plazak's anticipated testimony.

On December 12, the prosecution filed a pretrial motion to compel disclosure of Dr. Plazak's notes and records relating to the two occasions when Dr. Plazak examined the defendant.

Judge Hays heard argument on the motions on December 19. During the proceedings, Judge Hays identified three areas in which Dr. Plazak might testify: an opinion as to whether the defendant acted under the heat of passion on June 10; general testimony as to what acts are likely to induce passion in a reasonable person; and the content of the defendant's statements to Dr. Plazak. Judge Hays then asked the defendant to identify the areas in which Dr. Plazak would testify, and the defendant replied all three.

In support of their motion *in limine*, the prosecution again argued that jurors could apply the law of manslaughter by heat of passion without the assistance of expert testimony and that the anticipated testimony was not sufficiently grounded in scientific fact. In response, the defendant argued that there was a basis in Colorado law for admitting expert testimony to assist jurors in analyzing manslaughter by heat of passion charges, and that there was a scientific basis for Dr. Plazak's anticipated testimony.

With respect to the motion to compel disclosure, the prosecution informed Judge Hays that they met with Dr. Plazak but that Dr. Plazak did not prepare a written report regarding the defendant's case because neither the prosecution nor the defendant could afford to pay Dr. Plazak his $600 fee for a written report. Judge Hays observed that Dr. Plazak was "playing his cards very close to his chest," and got the impression that Dr. Plazak was not revealing anything.

Judge Hays issued an oral ruling on the motion *in limine* approximately one week after argument. At the outset of his oral ruling, Judge Hays noted that neither the defendant nor the prosecution had disclosed the exact nature of Dr. Plazak's testimony. Judge Hays knew that Dr. Plazak met with the defendant twice and with the prosecution once. Judge Hays continued his oral ruling by reciting the elements of manslaughter by heat of passion. He identified the issue as whether expert testimony was relevant to determining whether acts "were sufficient to excite an irresistible passion in a reasonable person." Judge Hays appropriately stated that, under the Colorado Rules of Evidence, expert testimony is only admissible when it will assist the trier of fact to understand the evidence or to determine a fact in issue.

In his oral ruling, Judge Hays thoroughly reviewed authorities cited by both sides, and granted the prosecution's motion *in limine* to exclude Dr. Plazak's testimony. Judge Hays based his oral ruling on the grounds that the subject matter of manslaughter by heat of passion was within the knowledge and experience of people of ordinary intelligence and that "Dr. Plazak's proposed testimony does not meet the test for admissibility of expert opinion."

### III.

Whether a defendant has committed manslaughter by heat of passion turns on whether: "(1) the act causing the death was performed upon a 'sudden heat of passion,' (2) caused by a 'serious and highly provoking act of the intended victim,' (3) which was sufficient 'to excite an irresistible passion in a reasonable person,' and (4) between the provocation and the killing, an insufficient 'interval' of time passed for 'the voice of reason and humanity to be heard.'" *Coston v. People*, 633 P.2d 470, 472 (Colo.1981) (citing § 18–3–104(1)(c), 8 C.R.S. (1978)).

In my view, a jury would not need expert testimony in order to ascertain whether these elements were met in this case. Thus, Judge Hays, based on the record

before him at the time of the ruling, did not abuse his discretion in excluding Dr. Plazak's testimony.

As the majority notes, admission of expert testimony is governed by Rule 702 of the Colorado Rules of Evidence (CRE 702). Maj. op. at 502. Under CRE 702, expert testimony can be admitted if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." CRE 702 (1984). The majority also notes that "[t]rial courts have broad discretion to determine the admissibility of expert testimony pursuant to CRE 702, and the exercise of that discretion will not be overturned in the absence of manifest error." Maj. op. at 502 (relying on *People v. Williams*, 790 P.2d 796, 798 (Colo.1990) ("[A]ppellate courts may not overturn a trial court's ruling unless it is manifestly erroneous.")).

As this court noted in *Williams*, the test of admissibility is whether "[o]n *this subject* can a jury from *this person* receive appreciable help?". *Id.* In *Williams*, we also noted that the "trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Id.* (citing *In re Air Crash Disaster at New Orleans, Louisiana*, 795 F.2d 1230, 1233 (5th Cir.1986)). The majority notes that the test "involves a common sense inquiry: whether an untrained lay person would be qualified to determine a particular issue 'intelligently and to the best possible degree without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" Maj. op. at 502.

Based on the facts of this case as revealed in the entire record,[1] a person of ordinary intelligence could determine that no serious and highly provoking act occurred that would excite an irresistible passion in a reasonable person without the aid of expert testimony. The defendant watched Beth cook and saw Mark touch Beth once, and they all discussed Mark and Beth's relationship. A jury would not need expert testimony to determine that these facts do not rise to the level of serious and highly provoking acts.

Additionally, the jury could determine that a sufficient interval of time had passed between the events and the defendant's actions for the voice of reason to be heard without the aid of expert testimony. The defendant dwelt on the status of his relationship with his estranged wife over the course of the day, visiting with Annette to discuss it, and apologizing to her for what he was about to do. The defendant carried a gun during the course of the day, and wore a down-filled coat in June. The defendant followed Mark outside of the house and shot him multiple times. The defendant returned to the house, found Beth, and dragged her from one room to another before shooting her.

A trier of fact could clearly conclude from these facts that the defendant's actions were the result of his reflections over the entire day. Thus, Judge Hays, in exercising his broad discretion, could reasonably have ascertained that expert testimony was not necessary to assist the jury in evaluating the objective elements of manslaughter by heat of passion.

I find, after reviewing the entire record, that there was no manifest error in the exclusion of Dr. Plazak's testimony. Dr. Plazak's contact with the defendant was minimal: he met with the defendant twice and never prepared a written report. Dr. Plazak's testimony under the facts of this case, including the defendant's testimony at trial, would not provide any scientific, technical, or other specialized knowledge that would assist the trier of fact (the jury) to understand the evidence or to determine the facts in issue under CRE 702.

For the foregoing reasons, I dissent from the majority's remand of the case to the trial court for further proceedings.

I am authorized to say that Chief Justice ROVIRA and Justice ERICKSON join in this dissent.

---

1. A remand for further proceedings would provide no additional evidence (after the trial which included defendant's testimony) to determine whether expert testimony would provide assistance to the jury to understand the issue of manslaughter by heat of passion.