The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 23, 2020

## 2020COA72

**No. 17CA2267, *People v. Roddy* — Criminal Law — Sentencing — Restitution — Assessment of Restitution**

Distinguishing *People v. Weeks*, 2020 COA 44, a division of the court of appeals holds that, because the prosecution presented its restitution request ninety days after defendant's conviction entered, seeking hundreds of thousands of dollars in attorney billings, good cause existed to extend the period for determining restitution so that the defendant would have the opportunity to object to the restitution request and the court would have the opportunity to review and rule on the award.

The special concurrence highlights the ambiguities in the wording of section 18-1.3-603, C.R.S. 2019; disagrees with the *Weeks* decision; and would conclude that the ninety-one-day time

limit in section 18-1.3-603(1) applies to the prosecution's determination of restitution, and not to the court's authority to enter a restitution order.

Court of Appeals No. 17CA2267
Boulder County District Court No. 15CR1874
Honorable Maria E. Berkenkotter, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jonathan D. Roddy,

Defendant-Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE TERRY
Yun, J., concurs
Tow, J., specially concurs

Announced April 23, 2020

Philip J. Weiser, Attorney General, Frank R. Lawson, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Haddon, Morgan, & Foreman P.C., Jeffrey S. Pagliuca, Adam Mueller, Denver,
Colorado, for Defendant-Appellant

¶ 1 Defendant, Jonathan D. Roddy, appeals the restitution order entered against him by the district court. We reverse the restitution order and remand the case to the district court for further proceedings.

## I. Background

¶ 2 Defendant's guilty plea was a result of a complicated series of events involving the victim, who was his ex-wife. The following allegations were made by the prosecution.

¶ 3 Defendant and the victim share a child and were divorced in 2003. Since 2009, defendant and the victim had been engaged in litigation regarding parenting time, decision-making authority, and child support.

¶ 4 In a motion to temporarily restrict parenting time, filed in 2014, defendant included photographs of the inside and outside of the victim's home. Suspicious that the photos had been shot from inside her home, the victim hired a forensic photographer to investigate the location from which the photographs had been taken. The investigator concluded that the photos had been shot from inside the house. It was then apparent that defendant had

entered the house without the victim's permission, in violation of a court order, while she was out of town in November 2014.

¶ 5    The victim also discovered that defendant and his wife were using the victim's son's iPad to access the victim's personal emails and digital files that were stored in Apple's "iCloud" storage system. Defendant's wife had downloaded many of the victim's documents from the son's computer, including her email communications with her attorney regarding the domestic relations litigation. The emails also included the victim's communications with her financial advisors, accountants, family, and friends. Defendant and his wife intended to use the data they obtained against the victim in the domestic relations case.

¶ 6    The victim became involved in protracted litigation with defendant and his wife to retrieve her data. She tried to obtain permanent protection orders against defendant and his wife, and the parties entered into a settlement agreement in which defendant and his wife represented and warranted that they had returned all of the data, that they did not have any copies of the data, and that they would no longer use the data. Shortly thereafter, the victim alleged that defendant and his wife were continuing to use the

victim's data in violation of the agreement.  The parties then became involved in an arbitration proceeding for breach of the settlement agreement, and a contempt proceeding related to the domestic relations case.

¶ 7     Defendant and his wife were each charged in separate cases with one count of stalking and one count of computer crime.  After defendant pleaded guilty in this case to an added count of first degree criminal trespass for the November 2014 incident, he was given a two-year deferred judgment.  About fifteen months after his deferred judgment was entered, the trial court ordered him to pay restitution of $688,535 to reimburse the victim's attorney fees and investigation costs incurred in connection with defendant's conduct in the civil and criminal proceedings.  No restitution was sought or ordered in defendant's wife's case following her guilty plea to a computer crime.  Defendant now appeals the court's restitution order.

## II.     Withdrawn Guilty Plea

¶ 8     As an initial matter, the People contend that defendant waived his right to appeal the restitution order because, as part of the deferred judgment, he successfully withdrew his guilty plea and

obtained dismissal of the criminal charge against him, and payment of restitution was a condition of that deferred judgment. We disagree with the People's contention.

¶ 9    Section 18-1.3-603(4)(a)(I), C.R.S. 2019, states that any order of restitution is a "final civil judgment in favor of the state and any victim[,]" and that "any such judgment remains in force until the restitution is paid in full. The provisions of [sections 16-18.5-104 to -112, C.R.S. 2019,] apply notwithstanding the termination of a deferred judgment and sentence . . . ." Our supreme court has held that this provision means that dismissal of a charge upon completion of a deferred sentence does not deprive the trial court of authority to enforce a restitution order. *Pineda-Liberato v. People*, 2017 CO 95, ¶¶ 32-33. Given that restitution can be enforced after completion of a deferred sentence, and restitution is a separately appealable order, *see Sanoff v. People*, 187 P.3d 576, 578 (Colo. 2008), it follows that a defendant does not waive his right to appeal a restitution order by withdrawing his guilty plea.

¶ 10    Furthermore, the terms of the plea agreement did not indicate that defendant waived his right to appeal all non-jurisdictional issues related to the restitution order. The plea agreement,

according to the People, simply stated that defendant had sufficient income or assets to pay all restitution ordered by the court, and that failure to comply would be a violation of the plea agreement. Those terms do not address, much less waive, defendant's appellate rights to the restitution order.

¶ 11     We are also not persuaded by the People's contention that our supreme court's opinions in *Neuhaus v. People*, 2012 CO 65, and *Kazadi v. People*, 2012 CO 73, warrant a different result. Both cases are distinguishable.

¶ 12     Relying on *Neuhaus*, the People argue that "a defendant's motion to withdraw his guilty plea and dismiss the case pursuant to [section] 18-1.3-102 [effects] a waiver of all non-jurisdictional issues arising in the context of a deferred judgment and sentence," and that defendant cannot take the benefits of the deferred judgment and sentence, but still obtain appellate review of a restitution order. We do not read *Neuhaus* as supporting such an argument. That case dealt with conditional guilty pleas. The court there said that a guilty plea "'represents a break in the chain of events which has preceded it in the criminal process' and waives all non-jurisdictional errors in the defendant's conviction, including the seizure of

evidence." *Neuhaus*, ¶ 8 (quoting *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973)). Because the setting of restitution did not precede the guilty plea, *Neuhaus* does not support the People's argument.

¶ 13    The People next argue that, under *Kazadi*, defendant was obligated to seek a withdrawal of his plea agreement under Crim. P. 32(d) before completing his deferred judgment and sentence if he wanted to preserve his appellate challenge to the restitution order. We disagree. *Kazadi*, ¶ 20, noted that the parties had agreed that "Crim. P. 32(d) is an appropriate vehicle for withdrawal of guilty pleas involving deferred judgments." Though a defendant *may* file a motion to withdraw a guilty plea under Crim. P. 32(d), nothing in *Kazadi* requires a defendant to follow that procedure to enable him to contest a restitution order.

¶ 14    We therefore conclude that defendant's appeal of his restitution order is properly before us.

### III. Timeliness of Restitution Order

¶ 15    Defendant contends that the trial court did not have authority to enter the restitution order against him because it was entered

more than ninety-one days after entry of his deferred sentence. We disagree.

### A. Procedural Background

¶ 16 Defendant entered his guilty plea on July 20, 2016, and the court reserved restitution for ninety-one days. The People filed a motion for restitution within the ninety-one-day period, requesting that the court order restitution of $390,613.90, which represented the legal fees and disbursements that the victim made to two different law firms.

¶ 17 Defendant filed an objection to the restitution amount and requested that the court order the People to set forth a good faith basis for the requested restitution. The People filed their response in which they requested time to confer with the victim's civil attorney and with defendant's counsel, and the court granted this request.

¶ 18 After the parties met, the People filed a motion in February 2017 informing the court that the victim's civil attorney was concerned about releasing unredacted invoices because of the attorney-client privilege, and that the civil attorney would like to have a restitution hearing after resolution of the civil arbitration

7

hearing, which was scheduled for June 2017. Defendant filed a motion to dismiss the People's restitution request based on the delay, and the court ordered a restitution hearing to resolve these issues.

¶ 19    In July 2017, before the restitution hearing, the People moved to amend the restitution request to $827,236.22, explaining that the increase resulted from the victim's ongoing civil litigation with defendant. The People later filed affidavits supporting a reduced restitution amount of $688,535.12. The reduced amount accounted for attorney fees and costs that the victim had received in the contempt litigation. The People provided defendant's counsel with redacted billing records to preserve the victim's attorney-client privilege.

¶ 20    After a two-day hearing, the court ordered defendant to pay restitution of $688,535.12.

### B.    Analysis

¶ 21    Every order of conviction for a felony shall include consideration of restitution. § 18-1.3-603(1). Each such order shall include one or more of the following:

(a) An order of a specific amount of restitution be paid by the defendant;

(b) An order that the defendant is obligated to pay restitution, but that the specific amount of restitution shall be determined within the ninety-one days immediately following the order of conviction, unless good cause is shown for extending the time period by which the restitution amount shall be determined;

(c) An order, in addition to or in place of a specific amount of restitution, that the defendant pay restitution covering the actual costs of specific future treatment of any victim of the crime; or

(d) Contain a specific finding that no victim of the crime suffered a pecuniary loss and therefore no order for the payment of restitution is being entered.

§ 18-1.3-603(1).

¶ 22    An order for restitution may also be increased if "additional victims or additional losses not known to the judge or the prosecutor at the time the order of restitution was entered are later discovered and the final amount of restitution due has not been set by the court."  § 18-1.3-603(3)(a).

¶ 23    Defendant contends that, under *Meza v. People*, 2018 CO 23, and *People v. Turecek*, 2012 COA 59, the court lacked authority to enter its October 20, 2017, restitution order because it did so after its statutory authority expired.  He argues that the court was bound

9

by the ninety-one-day limit in section 18-1.3-603(1). He also asserts that the People never argued, and the district court never found, that good cause existed for extending the time period. The People counter that the ninety-one-day period limits only the time within which the *prosecution* must present its restitution request. We conclude that the court had authority to enter the restitution order.

¶ 24      A division of this court recently addressed this issue and held that a district court is obligated to order a specific amount of restitution within ninety-one days, unless good cause exists to extend that deadline. *People v. Weeks*, 2020 COA 44, ¶¶ 13-15.

¶ 25      Assuming, without deciding, that the statutory ninety-one-day time limit applies to the *period within which the court must enter an order for a specific amount of restitution*, we conclude that the district court here had authority to enter an order for restitution after the ninety-one-day deadline because good cause existed to extend the time period. *See Meza*, ¶¶ 13-14 (referring to a court's findings within ninety-one days but recognizing statutory extension of that time "for good cause"); *Weeks*, ¶ 20 (same); *People v. Knoeppchen*, 2019 COA 34, ¶ 20 (same); *Turecek*, ¶ 13 (same).

¶ 26    The court found that good cause had been shown to allow the People to file their amended restitution requests because the victim continued to incur and pay attorney fees.  Given this good cause finding, the court must necessarily have found good cause to likewise extend its own determination of restitution.  *See* § 18-1.3-603(1)(b) (empowering court to rely on a showing of good cause to extend the time period by which the restitution amount "shall be determined"); *see also Knoeppchen,* ¶¶ 25-26 (noting that nothing in the restitution statute explicitly requires the court to make a finding of good cause, the statute merely requires good cause to be shown, and the statute does not dictate when a showing or finding of good cause must be made).

¶ 27    Furthermore, the record supports that there was good cause to extend the time under section 18-1.3-601(1)(b).  *See Thyssenkrupp Safway, Inc. v. Hyland Hills Parks & Recreation Dist.,* 271 P.3d 587, 589 (Colo. App. 2011) ("[W]e may affirm a trial court's ruling on any grounds that are supported by the record.").  As the court found, the victim sought attorney fees and costs incurred as a result of the charged conduct, and she continued to incur and pay ongoing fees and costs.  The prosecution filed an initial request for

11

restitution ninety days after the deferred judgment was entered, as permitted by statute. In a case where such a high amount of restitution was sought based on complex facts, the prosecution's timing was not surprising.

¶ 28 *After expiration of the ninety-one-day statutory period,* defendant filed a "Motion to Compel People to Set Forth Good Faith Basis for Pecuniary Loss Pursuant to C.R.S. 18-1.3-601 *et seq.* and Objection to Restitution." Had the court ordered restitution within ninety-one days, it would have provided defendant an inadequate opportunity to lodge objections — a situation that would have been grossly unfair to defendant, especially given the size and complexity of the restitution demand. *See Weeks,* ¶ 20 ("[I]f the prosecution needs the full ninety-one days (or more) to complete its request for restitution under section 18-1.3-603(2), that in itself could constitute 'good cause' for the trial court to extend its restitution ruling beyond the ninety-one-day deadline . . . .").

¶ 29 We conclude that the court did not err in finding good cause, and, thus, the court had authority to enter the order. That good cause finding renders this case distinguishable from *Turecek* and *Meza,* cited by defendant. *See Turecek,* ¶¶ 14-15 (because

prosecution did not determine a specific amount of restitution within then-applicable ninety day period, prosecution's initial restitution request was merely an estimate, and record did not establish that good cause existed for prosecution's delay in determining restitution, district court erred in imposing restitution as requested by prosecution); *see also* § 18-1.3-603(3)(a) (permitting increase in the amount of restitution for additional losses "not known to the judge or the prosecutor at the time the order of restitution was entered"); *Meza,* ¶¶ 13-14 (noting statutory requirement to determine restitution within ninety-one days or longer if good cause is shown).

## IV.   Proximate Cause

¶ 30    Defendant next argues that the court erred in concluding that his unlawful conduct proximately caused the victim's losses because he pleaded guilty only to the physical trespass of her home and did not plead guilty to any computer crimes.  Because we agree with defendant's contention to the extent the restitution amounts were unrelated to the physical trespass, we reverse the restitution order and remand for the district court to award restitution only for the losses proximately caused by his conduct.

¶ 31    Restitution is defined as "any pecuniary loss suffered by a

victim." § 18-1.3-602(3)(a), C.R.S. 2019.  Restitution includes

losses or injuries proximately caused by an offender's conduct and

that can be reasonably calculated and recompensed in money.  *Id.*

The prosecution bears the burden of establishing the restitution

amount by a preponderance of the evidence.  *See* § 18-1.3-603(2);

*People v. Martinez*, 2015 COA 37, ¶ 30.  "In the context of

restitution, proximate cause is a cause which in natural and

probable sequence produced the claimed injury and without which

the claimed injury would not have been sustained."  *People v. Sieck*,

2014 COA 23, ¶ 6.

¶ 32    Proximate cause can be found where the victim incurs

expenses to avoid or mitigate the consequences of a specific and

ongoing threat related to the offender's unlawful conduct, rather

than merely to mitigate against a general feeling of insecurity.

*Martinez*, ¶¶ 35-38; *People in Interest of D.W.*, 232 P.3d 182, 185

(Colo. App. 2009).

¶ 33    Our supreme court recently held that conduct underlying an

acquitted charge cannot serve as the basis for a restitution order.

*Cowen v. People*, 2018 CO 96, ¶ 24.  The court based its decision on

an interpretation of the restitution statutes and concluded that the statutes limit restitution liability "to individuals *found guilty* of causing injury or property loss that resulted in suffering or hardship to victims harmed by their misconduct." *Id.* at ¶ 19.

¶ 34    A division of this court extended *Cowen* to hold that procedural due process does not allow a court to order a defendant to pay restitution based on losses caused by uncharged conduct. *People v. Sosa,* 2019 COA 182, ¶¶ 26-27. The division also addressed dismissed charges and reasoned:

> Unlike uncharged conduct, a dismissed charge is based on conduct for which an individual has been criminally charged. But like uncharged conduct, when a charged count is dismissed, an individual cannot be found guilty of (or plead guilty to) that crime. She cannot be deemed an "offender" as to the dismissed count, the conduct underlying the dismissed count cannot be deemed the "conduct of an offender," and no person can be considered a victim as to that conduct. And she retains the presumption of innocence as to the dismissed count. Thus . . . no court may order restitution for losses proximately caused by conduct underlying a dismissed charge. Due process so requires.

*Id.* at ¶ 28 (citations omitted).

¶ 35    The division noted that its decision does not prevent the prosecution and the defense from entering into a plea agreement that allows the dismissed counts to be considered for restitution purposes. *Id.* at ¶ 29. We agree with the *Sosa* division's reasoning and see no reason to depart from it.

¶ 36    Here, the deferred judgment agreement did not detail the charges for which defendant would be required to pay restitution. The agreement merely said that "defendant agrees that he has a sufficient amount of income and/or assets to pay all of the restitution and fees ordered by the court." The record does not indicate whether defendant was aware that he would be liable for restitution for the dismissed charges when he entered his guilty plea. But to the extent the People argue that defendant is responsible to pay these items as a complicitor, we reject that notion, because he did not plead or otherwise admit to being complicit in his wife's conduct.

¶ 37    We conclude that under these circumstances, defendant is only liable for restitution for the losses caused by the conduct to which he pleaded guilty. *See Sosa,* ¶ 28; *Cowen,* ¶ 19. We therefore remand to the district court to determine which of the

losses that were presented by the prosecution at the restitution hearing were proximately caused by defendant's trespass onto the victim's property, and to issue a new restitution order accordingly. The prosecution may not introduce any evidence that was not previously presented to the court.

## V.     Attorney-Client Privilege

¶ 38     Defendant next contends that the trial court erred in concluding that the attorney-client privilege applied to the victim's attorney billing records.  He further contends that, if the privilege did apply, the victim waived it by placing the records at issue.  We agree in part.

¶ 39     We note that our holding — that restitution may not be ordered with respect to conduct for which defendant was not convicted or did not agree to be responsible in a guilty plea — renders the court's previous restitution award obsolete, and to the extent some of the billing records relate only to conduct for which he was not convicted, those records are irrelevant.

¶ 40     To the extent the prosecution continues to seek restitution, we provide the following guidance to the court on remand.

¶ 41    The attorney-client privilege operates to protect communications between attorneys and clients relating to legal advice, § 13-90-107(1)(b), C.R.S. 2019; *Wesp v. Everson*, 33 P.3d 191, 196 (Colo. 2001).

¶ 42    Any descriptions of the tasks performed by counsel that may be contained in the bills could be attorney-client privileged information.  *See, e.g.*, *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402-03 (4th Cir. 1999) (billing records that reveal specific research or litigation strategy would be entitled to protection from disclosure); *Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the [attorney-client] privilege."); *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 373 (Pa. 2013) (billing records that contain descriptions of legal services that address the client's motive for seeking counsel, legal advice, strategy, or other confidential communications are undeniably protected under the attorney client privilege).

¶ 43    To the extent the victim or her counsel disclosed the billing

records *with task descriptions* to the prosecution, or to the

prosecution's expert witness who opined on their reasonableness,

and those billing records are still in issue with respect to

restitution, any attorney-client privilege was waived as to those

records.  *See Mountain States Tel. & Tel. Co. v. DiFede*, 780 P.2d

533, 543 (Colo. 1989) (recognizing that attorney-client privilege may

be waived if, "by words or conduct, [the privilege holder] has

expressly or impliedly forsaken his claim of confidentiality" with

respect to the information in question).

¶ 44    We see no basis to conclude that the prosecution or its expert

could be in privity with the victim for purposes of the attorney-client

privilege.  The privilege extends only to matters communicated by or

to an attorney's client in the course of gaining counsel, advice, or

direction with respect to the client's rights or obligations.  § 13-90-

107(1)(b); *Wesp*, 33 P.3d at 196; *Gordon v. Boyles*, 9 P.3d 1106,

1123 (Colo. 2000); *see also Lanari v. People*, 827 P.2d 495, 499

(Colo. 1992) ("[T]he privilege applies only to statements made in

circumstances giving rise to a reasonable expectation that the

statements will be treated as confidential.").  "[I]f a communication

to which the privilege has previously attached is subsequently disclosed to a third party, then the protection afforded by the privilege is impliedly waived." *Wesp*, 33 P.3d at 198. Thus, the privilege does not apply to billing records that have been so disclosed.

¶ 45 To the extent (1) the prosecution, on remand, continues to seek restitution for the victim's attorney fees, (2) the attorney task descriptions in the applicable billing records have not been previously disclosed to the prosecution or the expert witness, and (3) attorney-client privilege is claimed as to those descriptions, the prosecution must produce redacted copies of the subject bills to the defense. If the defense objects to the redactions, and the prosecution declines to produce additional information from the victim about the redactions, the district court must examine those task descriptions in camera to determine whether they are subject to the attorney-client privilege. *See id.* at 197-98 ("No blanket privilege for all attorney-client communications exists. Rather, the privilege must be claimed with respect to each specific communication and, in deciding whether the privilege attaches, a trial court must examine each communication independently."); *see*

*also People v. Madera*, 112 P.3d 688, 691 (Colo. 2005) (privilege is waived only to the extent necessary to give opponent a fair opportunity to defend against it).

¶ 46     If the court, after in camera review, determines that any particular attorney fee item *is likely* subject to payment as restitution, it should order the prosecution to provide the defense with at least some description of the task performed by counsel, so that defendant has a fair opportunity to review and challenge the propriety of ordering him to pay it as restitution.

### VI.   Due Process and Public Policy

¶ 47     Defendant contends that multiple alleged errors violated his right to due process and contravened public policy.

- Defendant contends that it was fundamentally unfair for the court to enter an order based on amounts that were unclear and were constantly revised.  Because we are reversing the court's order and remanding for further consideration of restitution, we need not address this contention.

- Defendant next contends that the prosecution abdicated its constitutional and statutory responsibility to independently determine whether restitution is proper by relying on the

victim's civil attorney's representations. We disagree. The prosecution is statutorily required to compile all information pertaining to restitution "through victim impact statements or other means." § 18-1.3-603(2). We see no error in the prosecution's reliance on assistance from the victim's counsel in determining her losses.

- Defendant also argues that he should have been provided with the email communications between the prosecution and the victim's civil attorney because they would have shed light on the basis of the restitution request and on whether the prosecution independently determined that restitution was proper. To the extent this issue remains relevant on remand, given our rulings, the district court must determine whether and to what extent such disclosure should be granted.

VII. Conclusion

¶ 48 The restitution order is reversed and the case is remanded to the district court for further proceedings.

JUDGE YUN concurs.

JUDGE TOW specially concurs.

22

JUDGE TOW, specially concurring.

¶ 49     I agree that the district court had jurisdiction to order restitution in this case and that Jonathan D. Roddy can only be ordered to pay restitution for pecuniary losses that were proximately caused by the conduct to which he pleaded guilty. However, I write separately to address the need for clarification or re-assessment of the restitution statute by both the Colorado Supreme Court and the legislature.

## I.     The Process of Reserving Restitution

### A. The Historical View

¶ 50     As the majority notes, there are four proper ways for a sentencing court to address restitution at the time of sentencing: (1) order a specific amount; (2) order that the defendant is obligated to pay restitution, but defer establishing the actual amount; (3) order that the defendant is obligated to pay the actual costs of specific future treatment for the victim; or (4) find that no victim suffered a pecuniary loss and thus no restitution is owed.  § 18-1.3-603(1), C.R.S. 2019.  The second of these options — deferment — requires that the amount of restitution "*shall be determined* within the ninety-one days immediately following the order of conviction,

23

unless good cause is shown for extending the time period by which the restitution amount *shall be determined.*"  § 18-1.3-603(1)(b) (emphasis added).

¶ 51    Notably, this subsection of the statute does not explicitly identify who is "determining" the amount for purposes of this deadline.  But the next subsection of the statute references how, and by whom, restitution is "determined":

> The court shall base its order for restitution upon information presented to the court by the prosecuting attorney, who shall compile such information through victim impact statements or other means to determine the amount of restitution and the identities of the victims. Further, the prosecuting attorney shall present this information to the court prior to the order of conviction or within ninety-one days, if it is not available prior to the order of conviction. The court may extend this date if it finds that there are extenuating circumstances affecting the prosecuting attorney's ability to determine restitution.

§ 18-1.3-603(2).  Thus, at least for purposes of this paragraph, it is clear that the prosecutor "determines" the amount of restitution and the identities of the victims.

¶ 52    Despite this language, our appellate courts have routinely stated, or at least assumed, that the determination of restitution

24

referenced in section 18-1.3-603(1)(b) is a different act than the determination of restitution referenced in section 18-1.3-603(2). Recently, for example, a division of this court explicitly held that the earlier paragraph places the onus of determining the amount of restitution within ninety-one days on the sentencing court. *People v. Weeks*, 2020 COA 44, ¶ 13.

¶ 53    Several other divisions have at least assumed that to be the case. In *People v. Harman*, 97 P.3d 290, 293 (Colo. App. 2004), a division of this court rejected a claim that the ninety-one-day provision was jurisdictional. In doing so, the division observed that "[t]he General Assembly set forth separate standards for accepting the late presentation of restitution information by the prosecutor and for the late determination of the restitution amount." *Id.*

¶ 54    In *People v. Turecek*, 2012 COA 59, ¶ 13, a division of this court held that the statute "mandates the determination of the specific amount of restitution within ninety days of the order of

conviction and provides an exception only if good cause to extend that time period is shown."[1]

¶ 55    And in *People v. Knoeppchen*, 2019 COA 34, ¶ 19, the division stated that when the determination of restitution has been reserved, "the statute requires the amount of restitution to be established within ninety-one days."  However, in a footnote, the division observed that making the deadline for the prosecution to provide the court with restitution information the same as the deadline for the court to set the amount of restitution creates an inconsistency such that the sentencing court in many, if not most, situations would not be able to rule by the ninety-first day.  *Id.* at ¶ 19 n.4.[2]

¶ 56    Our supreme court has never been directly asked to resolve this question, but has made observations similar to those in *Weeks*,

---

[1] Subsequent to the entry of the order on appeal in *People v. Turecek*, 2012 COA 59, the time periods in the statute were amended from ninety to ninety-one days.  Ch. 208, sec. 112, § 18-1.3-603, 2012 Colo. Sess. Laws 866-67.

[2] I acknowledge that I was the author of the division's opinion in *People v. Knoeppchen*, 2019 COA 34.  Since noting what at the time I viewed as an apparent inconsistency in the statute, however, I have come to the conclusion, for reasons set forth in this special concurrence, that this perceived inconsistency was actually an indication that the prevailing interpretation of the statute was incorrect.

*Harman, Turecek*, and *Knoeppchen* reflecting at least an assumption that the deadline in section 18-1.3-601(1)(b) applies to the court.

¶ 57    For example, in *Sanoff v. People*, 187 P.3d 576, 578 (Colo. 2008), the court explained that this provision, originally enacted in 2000, altered the statutory process for establishing criminal restitution. Before this enactment, the amount of restitution had to be fixed at the time of sentencing and included on the mittimus. *Id.* The new statute, though still requiring that the order of conviction include some consideration of restitution, authorized the sentencing court to "postpone a determination of the specific amount of restitution." *Id.*

¶ 58    The supreme court again addressed this scheme in two companion cases involving the sentencing court's ability to modify restitution once ordered. *People v. Belibi*, 2018 CO 24; *Meza v. People*, 2018 CO 23. In *Belibi*, the court stated that "the current statutory scheme permits a criminal court, under certain circumstances, to order a defendant obligated to pay restitution and yet order that the specific amount of restitution *be set within ninety-one days*." *Belibi*, ¶ 7. Notably, this language was qualified

with the phrase "[a]s we described more fully in *Meza v. People*, 2018 CO 23, ___ P.3d ___, also reported today by this court." *Id.*

¶ 59 In *Meza*, however, the court was not as direct. In fact, the court seemed to use different nomenclature to refer to the sentencing court's act of establishing a restitution amount. For example, the court observed that the 2000 legislation "altered existing law by relieving the sentencing court of its obligation *to set* the amount of restitution at the time of sentencing." *Meza*, ¶ 10 (emphasis added). Similarly, in discussing how a court might be faced with altering a non-final restitution amount, the court stated, "[t]he statutory scheme therefore allows for specific amounts of restitution *to be determined and ordered* at sentencing, without their necessarily representing the 'final amount' to be set by the court." *Id.* at ¶ 15 (emphasis added). In other words, *Meza* appears to recognize the difference between the determination of the amount of restitution and the trial court's act of setting or ordering that amount. Indeed, the court also stated that "the statutory scheme does not explicitly limit the circumstances under which a sentencing court may postpone until after conviction a final determination of the specific amount of restitution owed by the

28

defendant." *Id.* at ¶ 11.  This language is difficult to reconcile with an interpretation of the ninety-one-day deadline in section 18-1.3-603(1)(b) as applying to the sentencing court.

## B. A Different Interpretation

¶ 60    Significantly, the issue of whether this particular ninety-one-day deadline applied to the sentencing court's act of entering an order imposing restitution or merely to the prosecution's act of providing restitution information to the sentencing court was not before the supreme court in *Sanoff, Belibi,* or *Meza*.  In *Sanoff*, the issue was solely whether the filing of a direct appeal of a judgment of conviction divested the sentencing court of jurisdiction to order a specific amount of restitution while the appeal was pending. *Sanoff*, 187 P.3d at 577.  In *Belibi* and *Meza*, the issue was not whether the sentencing court ruled (or was required to rule) within ninety-one days, but rather whether it could change the amount of restitution previously ordered.  *Belibi*, ¶ 2; *Meza*, ¶ 2.

¶ 61    Thus, in my view, the language in each of these cases appearing to state that the time period in section 18-1.3-603(1)(b) establishes a deadline by which the court must fix the amount of restitution was dictum.  As such, this language does not

conclusively resolve the interplay between section 18-1.3-603(1)(b) and 18-1.3-603(2).[3]  Moreover, I believe the dicta in these opinions reflect an illogical reading of the statute.  For similar reasons, I respectfully disagree with the division's holding in *Weeks*, and with the assumptions and observations made in the other cases discussed above.

¶ 62     The first reason for my disagreement is rooted in the canon of statutory interpretation that counsels us to "ascribe the same meaning to the same words occurring in different parts of the same statute, unless it clearly appears therefrom that a different meaning was intended."  *Everhart v. People*, 54 Colo. 272, 276, 130 P. 1076, 1078 (1913); *see also Berthold v. Indus. Claim Appeals Office*, 2017 COA 145, ¶ 35.

¶ 63     As noted, both subsection (1)(b) and subsection (2) of the statute refer to "determining" restitution.  The latter, two separate times, explicitly places the obligation to determine restitution on the

---

[3] To the extent this language was not dicta, I urge the supreme court to take a fresh view of its interpretation of the restitution statute.  The lack of clarity in this area has resulted in a significant increase in appellate claims involving the sentencing court's authority and jurisdiction to enter restitution orders outside the ninety-one-day period.

prosecuting attorney. First, it provides that the prosecuting attorney "shall compile such information through victim impact statements or other means *to determine* the amount of restitution and the identities of the victims." § 18-1.3-603(2) (emphasis added). Then it states that the court may extend the deadline for submitting the information "if it finds that there are extenuating circumstances affecting *the prosecuting attorney's ability to determine restitution.*" *Id.* (emphasis added).

¶ 64    To the contrary, subsection (1)(b) does not impose the duty to determine restitution upon the court. Rather, it provides one way in which the court may discharge its obligation to address restitution in the judgment of conviction, that being to enter an order that restitution is owed "but that the specific amount of restitution shall be determined within the ninety-one days immediately following the order of conviction, unless good cause is shown for extending the time period by which the restitution amount shall be determined." § 18-1.3-603(1)(b).

¶ 65    The word "determine" should be given the same meaning throughout the statute — i.e., the process of identifying the amount

31

of restitution and the victims to which it is owed.[4]  There is nothing in the statute to suggest the legislature intended otherwise.  Indeed, as noted in *Knoeppchen,* to read the provisions as if one refers to the prosecutor's gathering of the information to present to the court and the other refers to the sentencing court's ultimate resolution of the request based on that information would set up a frequent conflict in that the court would often be left with little to no time to rule without giving the defendant an opportunity to respond to the request.  It would seem odd for the legislature to provide for a "good cause" extension when the need for such an extension would appear to be the rule and not the exception.[5]

¶ 66    Significantly, within this same statute, the legislature used a different term than "determine" when referring to the sentencing

---

[4] Of course, the ultimate act of fixing the amount owed falls to the court, after providing the defendant with an opportunity to challenge the prosecuting attorney's "determination" of the amount and holding the prosecution to its burden of proving the accuracy of its determination by a preponderance of the evidence.  *See People v. Martinez,* 166 P.3d 223 (Colo. App. 2007).

[5] To the extent the historical interpretation continues to hold sway, the legislature may wish to address this structure to avoid trial courts being put in an unworkable situation or feeling forced to rule quickly, potentially at the expense of the defendant's opportunity to be heard on the issue.

court's act of establishing the final amount of restitution. In particular, the statute provides that if additional victims or losses are later discovered, the sentencing court may increase the amount of restitution provided that "the final amount of restitution due has not *been set* by the court." § 18-1.3-603(3)(a) (emphasis added). Thus, while the sentencing court "sets" the final amount of restitution, it does so based on the prosecutor's "determination." But only the latter must be accomplished (absent a showing of good cause or extenuating circumstances as applicable) within ninety-one days.

¶ 67 Moreover, contrary to the division's view in *Weeks*, this construction does not "render section 18-1.3-603(1)(b) superfluous of the language in section 18-1.3-603(2)." *Weeks*, ¶ 14. The two provisions serve different purposes. The first paragraph requires the court to expressly include consideration of restitution in the judgment of conviction. It is important to remember that this paragraph never says "the court shall determine restitution within ninety-one days." Rather, it merely says that, when a court is deferring restitution, the order of conviction must include specific

language, i.e., that restitution shall be determined within that time frame (or some other time frame upon a showing of good cause).

¶ 68      The second paragraph explains how the amount of restitution (if any) is arrived at.  Note that the process by which the prosecuting attorney determines the restitution and the identity of the victims, as set forth in subsection (2), applies whether the court is deferring restitution, ordering restitution on the day of sentencing, ordering restitution for a particular future treatment, or finding that no restitution is owed.

¶ 69      Nor is it either a superfluity or an inconsistency that the legislature established two different standards to obtain an extension of the ninety-one-day deadline, because the assessment addresses the need for additional time at two different points in the process.  The first provision allows the court to determine at the time it enters the order of conviction that there is good cause for granting an initial period of deferral longer than ninety-one days. The second provision allows for an additional deferment period, but to warrant this additional time requires a different showing —
"extenuating circumstances." § 18-1.3-603(2).  At these two different points on the timeline, both the reasons underlying the

need for additional time and the impact of additional delay on defendants and victims may be different. Accordingly, it is not unusual that the legislature chose to impose different standards for the two requests. Consequently, this view of the statute actually avoids making any of the language superfluous. *See People v. Null*, 233 P.3d 670, 679 (Colo. 2010) (Appellate courts "avoid interpretations that would render any words or phrases superfluous or would lead to illogical or absurd results.")

¶ 70    Moreover, this interpretation differs from the historically held view of the statute in that it avoids the nearly unworkable conflict created when the two ninety-one-day provisions are read to apply to different acts (the prosecution's provision of the information and the court's ultimate decision imposing restitution). Also, the historical view increases the possibility that a victim loses the right to restitution, and a defendant avoids responsibility to pay it, merely because a trial court does not act within the relatively short time period. Instead, by reading the statute as imposing deadlines by which the prosecution must act, but granting the court the flexibility to adjust those deadlines, this construction serves the purposes of the statute, which include imposing restitution as "a

mechanism for the rehabilitation of offenders," deterring "future criminality," ensuring full restitution for victims of crime in the most expeditious manner, and "aid[ing] the offender in reintegration as a productive member of society."  *See* § 18-1.3-601(1)(c), (1)(d), (1)(g)(I), (2), C.R.S. 2019.  This statutory construction is thus more consistent than the historical view with the legislative mandate that the restitution statute "be liberally construed to accomplish" these purposes.  § 18-1.3-601(2).

¶ 71     Under this interpretation, having reserved restitution for ninety-one days,[6] the court could extend the initial deadline based on "extenuating circumstances affecting the prosecuting attorney's ability to determine restitution."  § 18-1.3-603(2).  Such circumstances are more than sufficiently shown by the fact that the claimed restitution was based on expenses arising out of ongoing legal battles allegedly caused by Roddy's conduct, and thus were a

---

[6] I note that at the time of the plea the prosecution made no representation that restitution information was "not available prior to the order of conviction."  § 18-1.3-603(2), C.R.S. 2019.  However, because Roddy does not challenge the sentencing court's initial decision to reserve restitution, neither I nor the majority need address that issue.

continually moving target.[7]  Thus, I agree, albeit for reasons different than the majority, that the sentencing court had the authority to enter a restitution order outside of the ninety-one-day window.

---

[7] The fact that the majority holds — and I agree — that most if not all of these legal expenses were ultimately not chargeable to Roddy does not impact whether the circumstances interfering with the prosecutor's ability to gather the information to support the restitution claim were sufficiently extenuating to warrant the deadline extension.